[No. C014599. Third Dist. July 28, 1993.]

CENTRAL DELTA WATER AGENCY et al., Plaintiffs and Appellants, v. STATE WATER RESOURCES CONTROL BOARD, Defendant and Respondent.

622

## COUNSEL

Nomellini, Grilli & McDaniel, Dante John Nomellini, Daniel A. McDaniel, Wilson, Hoslett & Whitridge, David P. Whitridge, Brewer, Patridge, Gerlomes & Herrick and John H. Herrick for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich and Edna Waltz, Assistant Attorneys General, for Defendant and Respondent.

## OPINION

**SIMS, Acting P. J.**—This case involves a challenge to the constitutionality of portions of Water Code section 13396.5[1] and of the implementing regulation (Cal. Code Regs., tit. 23, § 2236, hereafter regulation 2236) enacted by respondent State Water Resources Control Board (the Board). Appellants—two water agencies (Central Delta Water Agency and South Delta Water Agency, hereafter the agencies), Reclamation District No. 2072, and agricultural landowner Rudy Mussi—petitioned for mandamus and declaratory relief in the trial court to prevent the enforcement of regulation 2236 and to obtain a ruling that section 13396.5 was unconstitutional in part. The trial court denied the petition and further held that the agencies lacked standing to bring the action. We shall conclude the court erred as to standing; however, we shall affirm the judgment.

---

[1]All otherwise undesignated section references are to the Water Code.

## STATUTORY BACKGROUND

A. *The challenged provisions.*

    1. *Section 13396.5.*

Section 13396.5 (added by Stats. 1990, ch. 1294, § 1), which forms part of chapter 5.6 ("Bay Protection and Toxic Cleanup," §§ 13390-13396.5) of division 7 of the Water Code, provides in pertinent part:

"(a) The state board [State Water Resources Control Board] shall establish fees applicable to all point and nonpoint dischargers who discharge into enclosed bays, estuaries, or any adjacent waters in the contiguous zone or the ocean as defined in Section 502 of the federal Clean Water Act (33 U.S.C. Sec. 1362), which shall be collected annually.[2]

"(b) The fees shall create incentives to reduce discharges to the ocean, bays, and estuaries and shall be based on the relative threat to water quality from point and nonpoint dischargers. The schedule of fees shall be set at an amount sufficient to fund the responsibilities and duties of the state board, the State Department of Health Services, and the Department of Fish and Game established by this chapter. The total amount of fees collected pursuant to this section shall not exceed four million dollars ($4,000,000) per year. Nothing in this section limits or restricts the funding of activities required by this chapter from sources in addition to the fees established by this section.

"(c) Fees collected pursuant to this section shall be deposited in the Bay Protection and Toxic Cleanup Fund which is hereby created, and shall be available for expenditure by the state board, upon appropriation by the Legislature, for the purposes of carrying out this chapter.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

[2]The term "enclosed bays" as used in this provision means "indentations along the coast which enclose an area of oceanic water within distinct headlands or harbor works," including but not limited to Humboldt Bay, Bodega Harbor, Tomales Bay, Drake's Estero, San Francisco Bay, Morro Bay, Los Angeles-Long Beach Harbor, Upper and Lower Newport Bay, Mission Bay, and San Diego Bay. (§ 13391.5, subd. (a).) The term "estuaries" as used in this provision means "waters, including coastal lagoons, located at the mouths of streams which serve as mixing zones for fresh and ocean waters," including but not limited to the Sacramento-San Joaquin Delta, Suisun Bay, Carquinez Strait, and "appropriate areas of" eight named rivers. (§ 13391.5, subd. (b).)

"(e) Any person failing to pay a fee established under this section when so requested by the state board is guilty of a misdemeanor and may be liable civilly in accordance with subdivision (d) of Section 13261."[3]

Section 13396.5 further provides that the Board shall report to the Legislature by January 1, 1993, on the adequacy of the fee levels established therein. (§ 13396.5, subd. (f).) Lastly, it provides that it shall remain in effect only until January 1, 1994, unless a later-enacted statute deletes or extends that date. (§ 13396.5, subd. (g).)

In addition to the provisions set out above, Senate Bill No. 1845 (1989-1990 Reg. Sess.), which enacted section 13396.5, set forth an uncodified "section 2" of the statute which provides as relevant: "No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs which may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, changes the definition of a crime or infraction, changes the penalty for a crime or infraction, or eliminates a crime or infraction." (Stats. 1990, ch. 1294, § 2.)

2. *Regulation 2236.*

In December 1991, the Board adopted regulation 2236 to implement section 13396.5. The pertinent language of this regulation is as follows (italics added):

"(a) All point and nonpoint dischargers who discharge *directly* into enclosed bays . . . , estuaries . . . , or adjacent waters in the contiguous zone or the ocean . . . , shall be subject to an annual fee pursuant to Section 13396.5 of the Water Code. This fee is in addition to the fees required in Title 23, Section 2200, California Code of Regulations.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) Any person failing to pay the fee established under this Section, when so requested by the State Board, may be liable civilly in accordance with Subdivision (d) of Section 13261 of the Water Code."[4]

---

[3]Section 13261, subdivision (d), provides that civil liability may be imposed administratively by a regional board in an amount up to $5,000 for each day in which the violation occurs, or by the superior court in an amount up to $25,000.

[4]Subdivisions of regulation 2236 not quoted here create specific fee schedules for various categories of dischargers and set up the mechanisms for collecting and paying the fees.

DISCUSSION

I

██ We first address appellants' contention that the trial court erred in concluding the agencies lacked standing because they were not real parties in interest. Appellants assert the agencies have standing pursuant to sections 4.1 of the South Delta Water Agency Act (Stats. 1987, ch. 667, § 3, p. 2108) and 4.1 of the Central Delta Water Agency Act (Stats. 1982, ch. 1360, § 5, pp. 5060-5061), which identify the agencies' general purpose of making and administering agreements for the provision of a dependable water supply to those within their boundaries, and allow them to advise and assist landowners and local districts in reclamation and flood control matters; sections 4.3 of the South Delta Water Agency Act (Stats. 1973, ch. 1089, p. 2212) and 4.4 of the Central Delta Water Agency Act (Stats. 1973, ch. 1133, p. 2321), which provide the agencies with incidental powers to carry out their functions; and sections 4.2, subdivision (b) of the South Delta Water Agency Act (Stats. 1987, ch. 667, § 4, pp. 2108-2109) and 4.3, subdivision (b) of the Central Delta Water Agency Act (Stats. 1973, ch. 1133, p. 2321), which empower the agencies to sue or be sued. Because a discharge fee is a "reclamation matter," and legal action to determine the validity of such a fee is "an activity to assist landowners in local districts," appellants assert that the agencies have standing to bring this challenge pursuant to their statutory mandates. We agree.

Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, *except as otherwise provided by statute*." (Italics added.) Public entities in California have legal capacity to sue and be sued. (Gov. Code, § 945.) ██ Where a water district or agency is expressly authorized under its enabling statute to sue on behalf of its constituent water users, it may do so even without naming any of those users as party plaintiffs. (Code Civ. Proc., § 369, subd. (a)(4); *Orange County Water District* v. *City of Riverside* (1959) 173 Cal.App.2d 137, 167-170 [343 P.2d 450].)

██ Moreover, a political subdivision of the state may challenge the constitutionality of a statute or regulation on behalf of its constituents where the constituents' rights under the challenged provision are "inextricably bound up with" the subdivision's duties under its enabling statutes. (See *Selinger* v. *City Council* (1989) 216 Cal.App.3d 259, 271 [264 Cal.Rptr. 499]; see generally *Singleton* v. *Wulff* (1976) 428 U.S. 106, 114-116 [49 L.Ed.2d 826, 833-834, 96 S.Ct. 2868].) Under the statutes cited by the agencies, it is clear that the agencies' duties are bound up with a determination whether the challenged provisions violate the rights of the agencies' constituent water users.

We conclude the agencies have standing to pursue their claims.

## II

We turn first to appellants' equal protection challenge. Appellants argue in the alternative: (1) either the Board violated equal protection by construing section 13396.5 so as to require fees only from "direct" dischargers, or (2) if the Board's regulation is a reasonable interpretation of the statute, as the trial court found, then the statute itself violates equal protection. Both contentions stand or fall on the premise that there can be no rational basis for distinguishing between those who discharge "directly" into a body of water protected under section 13396.5 and those who discharge "indirectly" into such a body—i.e., by discharging into a tributary of an "enclosed [bay], [estuary], adjacent water of a contiguous zone, or the ocean," rather than into the protected body itself. As we shall explain, this premise is wrong; therefore appellants' conclusions do not follow.

A. *Regulation 2236 is a reasonable interpretation of the statute.*

█ Appellants contend that by inserting the word "directly" after the word "discharge" in regulation 2236, subdivision (a), the Board disregarded the clear mandate of section 11396.5, subdivision (a), to impose fees on *all* dischargers and impermissibly adopted an arbitrary and capricious distinction between direct and indirect dischargers which offends against the principle of equal protection. To evaluate this contention, we must first decide whether the statute compels the levying of fees against all dischargers, whether or not they discharge directly into a protected body of water.

█ " '[T]he contemporaneous administrative construction of [an] enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.' [Citation.]" (*State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 777 [144 Cal.Rptr. 758, 576 P.2d 473].) █ ". . . [A]pparent ambiguities frequently may be resolved by the contemporaneous construction of the Legislature or of the administrative agencies charged with implementing the new enactment." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) However, "administrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent." (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244].)

█ "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the

legislative purpose, i.e., the object to be achieved and the evil to be prevented by the legislation. [Citations.]" (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].)

"Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, . . . [Citations.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, "[w]here a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. . . . Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided. [Citations.]" (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

■■■ "The rejection [by the Legislature] of a specific provision contained in an act as originally introduced is 'most persuasive' that the act should not be interpreted to include what was left out. [Citation.]" (*Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848]; see also *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17-18 [270 Cal.Rptr. 796, 793 P.2d 2]; *California Mfrs. Assn., supra*, 24 Cal.3d at p. 846.)

■■■ The language of section 13396.5, subdivision (a) is ambiguous on its face. The expression "all . . . dischargers who *discharge into* enclosed bays, estuaries," et cetera, does not plainly state what it means to "discharge into" a body of water. Ordinary usage would reasonably allow either the construction put on this language by appellants ("discharge into" a body of water means either directly, or indirectly by way of a tributary) or that put on it by the Board ("discharge into" means only *directly* into).[5] Therefore we turn for enlightenment to the statutory scheme of which this provision forms a part and to the legislative history of the provision.

Section 13396.5 was added in 1990 to chapter 5.6 ("Bay Protection and Toxic Cleanup") of division 7 of the Water Code (§ 13390 et seq.), which

---

[5]Appellants assert in their reply brief that if the Legislature had wanted to convey the meaning argued for by the Board, it could have used the word "within" instead of "into," which in appellants' view is "not [a] word of limitation . . . ." Since this argument was not raised in appellants' opening brief, we need not consider it. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) In any event, it lacks merit. Had the statute been worded as appellants propose, it might have been construed to apply only to persons or entities who discharged from within the boundaries of a protected body of water.

had been enacted the previous year (Stats. 1989, ch. 269, § 50, pp. 1341-1346) in order to require the Board and its subsidiary regional boards to "establish programs that provide maximum protection for existing and future beneficial uses of bay and estuarine waters, [including] a plan for remedial action at toxic hot spots," and to further compliance with federal law relating to toxic pollutants in water. (§ 13390.)[6] This chapter specifically requires the Board to formulate a water quality control plan for enclosed bays and estuaries (§ 13391), to develop and maintain a program to identify and ameliorate existing "toxic hot spots" and to prevent the creation of new ones (§ 13392), to adopt a work plan and objectives for sediment quality as to toxic pollutants (§§ 13392.6, 13393), to assess and rank toxic hot spots in order of priority (§ 13393.5), and to prepare and submit to the Legislature an annual expenditure plan for implementing the requirements of the chapter. (§ 13395.)

By adding section 13396.5 to chapter 5.6, the Legislature gave the Board a funding source to carry out the objectives of the chapter, which originally contained no mention of funding other than a directive to the Board to use any federal funds available. (§ 13390.) By requiring the Board to report to the Legislature on the adequacy of the fee structure contained in the statute, and by causing section 13396.5 to expire by a date certain unless reenacted, the Legislature showed its intent to exercise close and continuing scrutiny over the operation of the fee-collection scheme to determine whether that scheme would effectively serve its intended purpose.

As enacted, section 13396.5, subdivision (a) requires the Board to "establish fees applicable to all *point and nonpoint* dischargers who discharge into enclosed bays, estuaries, or any adjacent waters in the contiguous zone or the ocean . . . ." (Italics added.) Section 13373 specifies that the term "point source" has the same meaning in the Water Code as in the Federal Water Pollution Control Act.[7] (33 U.S.C. § 1251 et seq.) Under the federal act, "[t]he term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel,

---

[6]"Toxic hot spots" are locations in any body of water protected under this chapter, "the pollution or contamination of which affects the interests of the state, and where hazardous substances have accumulated in the water or sediment to levels which (1) may pose a substantial present or potential hazard to aquatic life, wildlife, fisheries, or human health, or (2) may adversely affect the beneficial uses of the bay, estuary, or ocean waters as defined in water quality control plans, or (3) exceeds adopted water quality or sediment quality objectives." (§ 13391.5, subd. (e).)

[7]Section 13373 belongs to chapter 5.5 of the Water Code ("Compliance With the Provisions of the Federal Water Pollution Control Act as Amended in 1972"). The purpose of this chapter (§ 13370 et seq.) is to implement the provisions of the federal act and to assure the consistency of California programs with that act. (§§ 13370, 13372.)

conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural storm-water discharges and return flows from irrigated agriculture." (33 U.S.C. § 1362(14).)

By specifying that both "point and nonpoint" dischargers are to be assessed fees under section 13396.5, the Legislature clearly intended to cover all persons and entities who "discharge into" protected bodies of water, whether through "discrete conveyances" ("point sources") or through diffuse means such as agricultural runoff ("nonpoint sources"), in keeping with its determination to remedy the problem of "toxic hot spots" and sediment pollution in enclosed bays and estuaries. Since the means by which toxic pollutants reach a body of water do not self-evidently correlate with the degree of harm they cause there, it was logical for the Legislature to include without distinction both "point" and "nonpoint" dischargers within the scope of section 13396.5, and to entrust to the Board's expertise the task of devising a fee structure "based on the relative threat to water quality from point and nonpoint dischargers." (§ 13396.5, subd. (b).)

However, as originally proposed (Sen. Bill No. 1845 (1989-1990 Reg. Sess.) Jan. 25, 1990), section 13396.5, subdivision (a) did not speak of "point and nonpoint dischargers." Instead, it provided that fees would be applicable to "all *direct and indirect* dischargers" into protected bodies of water. (Italics added.) The words "direct and indirect" were struck out by amendment early in the bill's history and replaced by the present language, which remained through all subsequent versions. (Sen. Amend. to Sen. Bill No. 1845 (1989-1990 Reg. Sess.) Mar. 27, 1990.) The Board contends that by so amending the bill, the Legislature showed its intent not to encompass "indirect" dischargers within the scope of the statute. Appellants contend first that there is no evidence this change of language was so motivated, second that the expression "point and nonpoint dischargers" is *broader* than the original language and therefore could not have been intended to exclude any dischargers included in the original language. The Board has the better argument.

The fact that the Legislature chose to omit a provision from the final version of a statute which was included in an earlier version constitutes strong evidence that the act as adopted should not be construed to incorporate the original provision. (*Wilson, supra,* 6 Cal.App.4th at p. 555.) If the Legislature had meant "indirect" dischargers to be covered by the statute, it could simply have retained this provision; its failure to do so is

strong evidence against appellants' construction of the statute. And, contrary to appellants' view, the Legislature did not do so in other words by substituting "point and nonpoint dischargers" for "direct and indirect dischargers." These dyads are not synonymous. A "direct" discharge may come either from a point source or a nonpoint source. Thus the use of the expression "point and nonpoint dischargers" does not prove the Legislature's intent to restore by obscure paraphrase the coverage of "indirect" dischargers which it had expressly eliminated.

Appellants' argument that "point and nonpoint" is broader in scope than "direct and indirect" and therefore must be understood to include the latter term lacks merit. As we have indicated, "point/nonpoint" denotes the means by which a discharge is conveyed into a body of water, not the discharger's nearness to or distance from that body of water or the existence or nonexistence of intervening tributaries between the discharge's source and destination. (§ 13373; 33 U.S.C. § 1362(14).) Thus, asserting that one pair of terms is broader than the other is like asserting that an apple is broader than an orange. One term can properly be called broader than another only if the two terms describe the same attribute. Here, the terms compared do not do so.

In their reply brief appellants seek to bolster their statutory argument by setting out and discussing the definitions of "direct discharge" and "indirect discharger" in federal regulations implementing the Federal Clean Water Act. Since appellants fail to explain why they did not offer argument as to the relevance of these definitions in their opening brief, the point is waived. (*Neighbours, supra,* 216 Cal.App.3d at p. 235, fn. 8.) In any event, the definitions are irrelevant: the terms "direct discharge" and "indirect discharger" do not appear in section 13396.5, subdivision (a) as enacted, and the federal definitions of these terms (unlike that of "point source") are not incorporated by reference into the statutory scheme to which section 13396.5 belongs.

Appellants have thus failed to show that the Board's interpretation of section 13396.5, subdivision (a) was clearly erroneous or unauthorized. Accordingly, we defer to the Board's interpretation. (*State of South Dakota* v. *Brown, supra,* 20 Cal.3d at p. 777.)

B. *The statute as interpreted by the Board does not violate equal protection.*

Appellants next contend that if section 13396.5, subdivision (a) means what the Board has construed it to mean, this provision is unconstitutional because it violates equal protection. We disagree.

■ "[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. If the validity of the measure is fairly debatable, it must be sustained." (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815, citations and internal quotation marks omitted.)

■ "In analyzing the constitutionality of laws challenged under the equal protection clauses of the United States and California Constitutions, the standard of judicial review depends upon the interest affected and the classification involved. Where the legislation does not impinge upon either a fundamental right or involve a suspect classification requiring strict scrutiny, that legislation is invested with a presumption of constitutionality and any distinctions it draws must merely bear some rational relationship to a conceivable legitimate state purpose." (*Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 455 [1 Cal.Rptr.2d 392], citations and internal quotation marks omitted.)

■ The provision challenged here is an economic regulation which impinges on no fundamental right of appellants. (See *Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1507 [246 Cal.Rptr. 21].) Appellants do not argue, nor could they, that "direct" dischargers of toxic pollutants into bodies of water form a "suspect classification" for equal-protection purposes. Thus, as appellants concede, we need only find that the distinction between direct and indirect dischargers "bear[s] some rational relationship to a conceivable legitimate state purpose" (*Peretto, supra*, 235 Cal.App.3d at p. 455, internal quotation marks omitted) in order to uphold the constitutionality of section 13396.5, subdivision (a).

Appellants maintain that the distinction between direct and indirect dischargers flunks the rational-relationship test because section 13396.5 as a whole is intended to protect the designated bodies of water against *all* toxic pollution, not merely that which comes from dischargers on one side of an arbitrarily drawn geographic line. According to appellants, agricultural discharges from "direct" and "indirect" dischargers into the San Francisco Bay-Sacramento River Delta system are "virtually identical"; thus it is "absurd" to levy fees against one group and not the other. Moreover, appellants assert that the Bay-Delta system receives its worst toxic pollution from mercury and selenium discharged "indirectly" into tributaries far upstream of the Delta, yet the dischargers of these toxic pollutants escape fees,

a result contrary to the purpose of the statute.[8] Even assuming the truth of appellants' factual assertions, these arguments fail because they are not germane to the rational-relationship test.

The " 'Legislature need not address all facets of a problem at once, or at all, but may deal with particular parties and issues in accordance with priorities satisfying to itself[.]' [Citation.]" (*Peters* v. *Superior Court* (1989) 212 Cal.App.3d 218, 226 [260 Cal.Rptr. 426].) "In the area of economics and social welfare, the State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153 [citations and internal quotation marks omitted]." (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 410 [128 Cal.Rptr. 183, 546 P.2d 687].) Therefore, the fact (if it be a fact) that indirect dischargers who release toxic pollution equal to or greater than that released by direct dischargers are not assessed fees under section 13396.5, subdivision (a) does not prove that the "direct-indirect" distinction lacks a rational basis.

As the trial court found, the Legislature could reasonably have decided that it would impose an unworkable administrative burden on the Board to order the levying of fees against all dischargers, no matter how geographically remote from the protected body of water into which their discharges ultimately flow. Thus, requiring the Board to assess fees only against those persons and entities whose contribution to the "toxic hot spot" problem is easily traceable because their discharges flow directly into a bay or estuary was a permissible "rough accommodation" in keeping with the purpose of section 13396.5 as a whole. This distinction therefore bears a "rational relationship to a conceivable legitimate state purpose." (*Peretto, supra,* 235 Cal.App.3d at p. 455, internal quotation marks omitted.)

Moreover, even if we assume the truth of appellants' assertions as to the Bay-Delta system, this system is only one of many enumerated "enclosed

---

[8]Although appellants make this last point in the context of their contention that the Board misconstrued the statute in adopting regulation 2236, it fits just as well into their equal-protection argument given our holding that the direct-indirect distinction of regulation 2236 was actually intended by the Legislature.

bays, estuaries," et cetera, targeted by section 13390 et seq. for protection. If appellants' interpretation of the statute were to prevail, the Board would have to assess fees against "indirect" dischargers with respect to all the bodies of water named in section 13391.5 and to others which might later be determined to come within its scope. This point underscores the weight of the administrative burden the Board would be forced to bear absent the "direct-indirect" distinction crafted by the Legislature, and the reasonableness of the Legislature's decision not to impose this burden on the Board.

In appellants' reply brief they assert: "The administrative burden claim is lacking in record support." Appellants misunderstand the rational-basis test. The question under this test is not whether the reasons advanced to support a legislatively drawn distinction are supported by the record, but simply whether the distinction bears a rational relationship to "a *conceivable* legitimate state purpose." (*Peretto, supra,* 235 Cal.App.3d at p. 455, italics added, internal quotation marks omitted.) If it were otherwise, even reasons plainly stated by the Legislature to justify a statutory distinction might often fail the rational-basis test. The Legislature sometimes acts to anticipate potential problems without waiting for a body of evidence about those problems to accumulate. Under appellants' version of "rational basis," any reasons given by the Legislature to support such anticipatory lawmaking would necessarily be insufficient, no matter how plausible and closely tied to a legitimate state interest, for want of evidentiary support. Appellants cite no authority for their attempt to transform "rational basis" into something more closely resembling "strict scrutiny," and we are aware of none that would support their position.

Appellants cannot and do not contend that it would not be a "conceivable legitimate state purpose" for the Legislature to seek to minimize the Board's burden in implementing section 13396.5, subdivision (a). The Legislature could reasonably have decided that the efficient implementation of the statute's objectives required some line to be drawn, so that the Board was not put into an all-or-nothing dilemma in trying to make the most of its limited resources. Appellants have failed to show that the particular line drawn by the Legislature is arbitrary or capricious. Drawing this line did not violate equal protection.

## III

Finally we turn to appellants' remaining constitutional challenges to section 13396.5. They raise two separate contentions of unconstitutionality: (1) subdivision (e) of the statute violates article I, section 10, of the

California Constitution by making the failure to pay a fee potentially punishable by imprisonment, and (2) the statute as a whole violates article XIII B, section 6, of the California Constitution by imposing state-mandated costs on reclamation districts without providing for state subvention of those costs. These contentions lack merit.

A. *Section 13396.5, subdivision (e) does not unconstitutionally impose imprisonment for debt.*

Article I, section 10, of the California Constitution (added Nov. 5, 1974) provides as relevant: "A person may not be imprisoned in a civil action for debt or tort, . . ." ■■■ This provision derives in part from former article I, section 15 (repealed Nov. 5, 1974), which contained an express exception for "cases of fraud." (See *In re Trombley* (1948) 31 Cal.2d 801, 804 [193 P.2d 734]; *People* v. *Williams* (1966) 247 Cal.App.2d 394, 397 [55 Cal.Rptr. 550].) The deletion of this exception by the voters' enactment of Proposition 7 in 1974 had no substantive effect; thus the case law construing the exception under the former provision is precedent for the interpretation of the present provision. (*People* v. *Bishopp* (1976) 56 Cal.App.3d Supp. 8, 12-15 and fn. 6 [128 Cal.Rptr. 923].)

Section 13396.5, subdivision (e), as stated *ante*, makes "failing to pay a fee established under this section when so requested by the state board" a misdemeanor subject to civil liability. ■■■ The Board does not dispute appellants' contention that the penalty under this provision could include imprisonment. However, the Board contends that the "fraud" exception of former article I, section 15, of the California Constitution, as construed by case law, covers the provision because "failing to pay" under this provision means *willfully refusing* to pay, which is "fraud" within the meaning of the exception. The Board is correct.

In *Trombley, supra*, 31 Cal.2d 801, our Supreme Court held that Labor Code section 216, subdivision (a), which made it a misdemeanor for an employer who, "[h]aving the ability to pay, willfully refuses to pay wages due and payable after demand has been made," did not violate the constitutional proscription against imprisonment for debt. The purpose of this proscription was "to protect the poor but honest debtor who is unable to pay his debts, . . . not . . . to shield a dishonest man who takes an unconscionable advantage of another." (*In re Trombley, supra*, 31 Cal.2d at p. 809.) An employer who acted as described in Labor Code section 216, subdivision (a) necessarily intended to take such advantage, and this amounted to "fraud" within the meaning of the constitutional exception. (31 Cal.2d at pp. 809-810.)

Subsequent cases have extended *Trombley*'s fraud-exception rationale to statutes and portions of statutes criminalizing the failure to pay sums due to employees or to the government, even though the statutes did not use the term "willfully," on the ground that the requirement of willfulness must be read into the statutes. (*People* v. *Singer* (1980) 115 Cal.App.3d Supp. 7, 10 [171 Cal.Rptr. 587] [Rev. & Tax. Code, § 19409]; *People* v. *Neal C. Oester, Inc.* (1957) 154 Cal.App.2d Supp. 888, 891-893 [316 P.2d 784] [Unemp. Ins. Code, § 2110].) The court in *Singer* also held that the Revenue and Taxation Code provision construed therein must be read together with Penal Code section 20 (union of act and intent required for every crime); thus, even though the statute speaks only of failing to withhold taxes or to pay over withheld taxes, it must be read as requiring *willful* failure to pay in order for imprisonment to be imposed constitutionally. (115 Cal.App.3d Supp. at p. 10.)

Similarly, section 13396.5, subdivision (e), though not containing the word "willfully," can be reasonably construed only as requiring willful failure to pay in order for civil liability to be imposed thereunder. Since a statute must be found constitutional if there is any reasonable way to construe it which avoids constitutional infirmity (*Calfarm Ins. Co., supra,* 48 Cal.3d at pp. 814-815), we construe section 13396.5, subdivision (e) so as to require willful refusal to pay the assessed fee, in line with the interpretations of similarly worded statutes in *Singer, supra,* and *Oester, supra.*

Appellants attempt to distinguish *Singer* and *Oester,* but fail to recognize the underlying difficulty with their argument: statutes are not presumed unconstitutional unless proven constitutional, but rather the reverse. (*Calfarm Ins. Co., supra,* 48 Cal.3d at pp. 814-815.) Therefore, given a reasonable construction of a statute which avoids constitutional infirmity, we must adopt that construction. The mere fact that the statute could be read so as to impose an unconstitutional penalty does not require us so to read it, as appellants believe.

B.   *Appellants may not raise an article XIII B of the California Constitution claim in this proceeding.*

Article XIII B, section 6, of the California Constitution provides as relevant: "Whenever the Legislature or any State agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following

mandates: [¶] . . . [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; . . ."

The Legislature has chosen to implement the enforcement of California Constitution article XIII B, section 6, by creating a Commission on State Mandates and by requiring all questions concerning state-mandated costs to be presented to the commission in the first instance. (Gov. Code, § 17500 et seq.) This is the exclusive means for pursuing such claims. (Gov. Code, § 17552.) Until appellants have exhausted their administrative remedy before the commission, appellants cannot know whether the statute imposes a state-mandated cost, as they contend. Having failed to exhaust their administrative remedies before the commission, appellants may not raise an article XIII B challenge for the first time in court. (See *Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 333-336 [285 Cal.Rptr. 66, 814 P.2d 1308]; *County of Lassen* v. *State of California* (1992) 4 Cal.App.4th 1151, 1157 [6 Cal.Rptr.2d 359].)

### DISPOSITION

The judgment is affirmed.

Davis, J., and Raye, J., concurred.

A petition for a rehearing was denied August 23, 1993, and appellants' petition for review by the Supreme Court was denied October 14, 1993.