[No. C031293. Third Dist. Nov. 29, 1999.]

QUILLA BEVERLY, Plaintiff and Respondent, v.
ELOISE ANDERSON, as Director, etc., Defendant and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Charlton G. Holland III, Assistant Attorney General,

Frank S. Furtek and Michael V. Hammang, Deputy Attorneys General, for Defendant and Appellant.

Northern California Lawyers for Civil Justice, Stephen Goldberg, Bess M. Brewer; Coalition of California Welfare Rights Organizations and Grace Galligher for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In Government Code section 29853.5 (hereafter section 29853.5), the Legislature has provided in plain terms that counties responsible for issuing public assistance warrants must replace any warrant within five working days after receiving an affidavit from the legal owner or custodian of the warrant attesting that it has been lost, stolen, destroyed, or lost in the mail. Defendant California Department of Social Services (DSS) maintains, however, that under section 29853.5 it is required only to *investigate* a claimant's affidavit within five working days and that it may lawfully refuse to issue a replacement warrant if not satisfied that the affidavit is truthful. The trial court disagreed and granted plaintiff Quilla Beverly's petition for writ of mandate. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Beverly, a recipient of public assistance under the Greater Avenues for Independence Program (GAIN), filed an affidavit in Sacramento County on December 23, 1996, attesting that her warrant for child care expenses for the period August-November 1996 related to her participation in GAIN, in the amount of $1,339.52, had been lost, destroyed, or stolen. On December 31, 1996, the county notified Beverly that it had denied her claim for replacement of the warrant because its investigation had led it to conclude she received and cashed the original warrant. She immediately requested an administrative hearing. The hearing took place February 18, 1997, before an administrative law judge (ALJ) for DSS.

In a decision filed July 2, 1997, the ALJ affirmed the county's action and denied Beverly's claim on both factual and legal grounds. The ALJ first resolved the factual dispute in the county's favor. As to the law, the ALJ acknowledged Beverly's contention that section 29853.5 mandates the issuance of a replacement warrant within five working days after the filing of an appropriate affidavit. However, the ALJ also noted DSS's interpretation of the statute—that if DSS obtains evidence showing that the claimant received the warrant, the warrant is not "lost" and need not be replaced—and apparently adopted that interpretation as legally correct.

On October 15, 1997, Beverly filed a timely petition for peremptory writ of mandate in the superior court under Code of Civil Procedure sections 1085 and 1094.5. Under Code of Civil Procedure section 1085, Beverly sought a declaration that DSS has a mandatory duty to issue replacement warrants within five working days after the filing of an affidavit pursuant to section 29853.5; under Code of Civil Procedure section 1094.5, she sought an order directing the replacement of the lost warrant.

After opposition and hearing, the trial court granted Beverly's petition for peremptory writ of mandate.[1] The court ordered pursuant to Code of Civil Procedure section 1085 that DSS issue replacement warrants for all public assistance warrants reported lost, stolen, or destroyed within five working days after the recipient has filed an affidavit attesting to the loss of the original warrant "regardless of any investigation undertaken during those five days" and further ordered DSS to inform all county welfare departments of the writ.[2] The court also ordered, pursuant to Code of Civil Procedure section 1094.5, that DSS set aside its administrative decision in this matter and issue a replacement warrant to Beverly, with interest on the wrongfully withheld funds running from five working days after she filed her affidavit.

On appeal, DSS does not challenge the court's order to issue a replacement warrant to Beverly under Code of Civil Procedure section 1094.5, conceding that the facts in the matter were disputed. DSS appeals only from that part of the trial court's order made under Code of Civil Procedure section 1085, declaring that section 29853.5 imposes a mandatory duty on DSS to issue replacement warrants to all persons similarly situated to Beverly.

DISCUSSION

I

Under Code of Civil Procedure section 1085 (traditional mandamus), the trial court may issue a writ of mandate "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." The prerequisites for traditional mandamus are a " 'clear, present and usually ministerial duty upon the part of the [agency]' " and a " 'clear, present and beneficial right in the petitioner to the performance of that duty.' " (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].) ■ On review, where the facts are undisputed and the only issue is the proper interpretation of a statute, we are not

---

[1] The transcript of the hearing has not been provided to this court.

[2] Internal DSS documents in evidence before the trial court indicated that DSS acted in this case according to a previously adopted agency-wide policy.

bound by the trial court's determination. (*Calderon* v. *Anderson* (1996) 45 Cal.App.4th 607, 612 [52 Cal.Rptr.2d 846].)

## II

Section 29853.5 provides in part:

"(a) To the extent permitted by federal law and notwithstanding Article 3 (commencing with Section 29850) of Chapter 5 of Division 3 of Title 3 of the Government Code, a public assistance warrant, which has been lost, stolen, destroyed, or lost in the mail, shall be replaced by the county. Prior to replacing the warrant the legal owner or custodian shall comply with either paragraph (1) or paragraph (2), whichever is applicable:

"(1) Wait five working days . . . from the date that the warrant was mailed in cases where the warrant has been lost in the mail. After the waiting period the warrant shall be deemed to be lost and the legal owner or custodian shall be entitled to file an affidavit of the loss in the mail with the county. The affidavit shall contain information relative to the loss of the warrant in the mail, including the number, date, amount, and name of the payee of the warrant. The county shall assist the legal owner or custodian of the warrant in completing the affidavit.

"(2) If the warrant was not lost in the mail, an affidavit may be filed immediately with the county. The affidavit shall contain information relative to the loss, theft, or destruction of the warrant, including the number, date, amount, and the name of the payee of the warrant. The county shall assist the legal owner or the custodian of the warrant in the completion of the affidavit.

"*(b) When the affidavit has been signed by the legal owner or custodian of the warrant, the county shall issue a replacement warrant as soon as possible to ensure that the needs of the family continue to be met, but no later than five working days from the date that the affidavit has been signed and filed with the county. . . .*" (Italics added.)

DSS contends that the trial court erred by finding that section 29853.5, subdivision (b), imposed a ministerial duty on it to replace Beverly's warrant within five working days after she filed her affidavit. According to DSS, the filing of such an affidavit merely "gives rise to a rebuttable presumption" that the warrant has actually been lost, stolen or destroyed. DSS is therefore entitled to investigate the truthfulness of the warrant's averments within five working days, and if it discovers evidence rebutting

the "presumption" it may properly refuse to issue a replacement warrant. This construction of the statute, DSS asserts, is consistent with the Legislature's purpose in enacting the statute: "Surely, it is ridiculous to surmise that the Legislature intended county welfare departments to ignore compelling contradictory evidence when reason exists to investigate the circumstances of a lost warrant. And if it cannot be seriously entertained that the Legislature intended to permit issuance of replacement warrants without verification *at any time*, it is not reasonable to conclude that it intended section 29853.5 [to] bar the county to act on superior evidence during the five-day period triggered by the submission of a lost warrant affidavit." (Original italics.) DSS is mistaken.

First, the statute on its face cannot reasonably be construed as DSS construes it.

■ " 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' (*Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' (*People* v. *Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].)" (*Diamond Multimedia Systems, Inc.* v. *Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

■ Section 29853.5 plainly says that a county *shall* replace a warrant within five working days after the required affidavit has been filed and just as plainly says nothing about the county's duty or power to investigate before doing so. *Shall* is normally construed as a mandatory term in statutes. (*Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) DSS has given no reason why we should construe it otherwise.

Moreover, the relevant legislative history of section 29853.5 shows that the Legislature did not intend to give DSS the discretion it purports to find therein. As we shall explain, the bill which proposed the adoption of the statute at one time contained the provision DSS now reads into it, but this provision was *deleted* before the bill passed. ■ "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be

construed to include the omitted provision." (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512]; accord, *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 845-846 [157 Cal.Rptr. 676, 598 P.2d 836].) Similarly, "[t]he fact that the Legislature chose to omit a provision from the final version of a statute which was included in an earlier version constitutes strong evidence that the act as adopted should not be construed to incorporate the original provision." (*Central Delta Water Agency* v. *State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634 [21 Cal.Rptr.2d 453].)

The proposed legislation (Assem. Bill No. 2243 (1993-1994 Reg. Sess.) § 2) was amended after its introduction to provide for the investigation of claims of lost or stolen warrants before replacement warrants were issued. (Sen. Amend. to Assem. Bill No. 2243 (1993-1994 Reg. Sess.) July 7, 1993.) However, the Senate removed that provision before sending the bill back to the Assembly. (Sen. Amend. to Assem. Bill No. 2243 (1993-1994 Reg. Sess.) Aug. 16, 1993; see also Sen. Rules Com., 3d reading analysis of Assem. Bill No. 2243 (1993-1994 Reg. Sess.); Sen. Rules Com., Analysis of Assem. Bill No. 2243 (1993-1994 Reg. Sess.) as amended Aug. 16, 1993.)[3] ██ As we have seen, section 29853.5 as enacted contains nothing corresponding to the deleted provision. Therefore we conclude that the Legislature intended no such provision to be judicially grafted onto the statute. (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 24 Cal.3d at pp. 845-846; *Central Delta Water Agency* v. *State Water Resources Control Bd.,* supra, 17 Cal.App.4th at p. 634; *Rich* v. *State Board of Optometry, supra,* 235 Cal.App.2d at p. 607.)

Finally, requiring counties to carry out their ministerial duty under section 29853.5, even though this might occasionally cause replacement warrants to issue based on mistaken or fraudulent affidavits, does not give rise to an absurd result unintended by the Legislature. (See *California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 341 [33 Cal.Rptr.2d 109, 878 P.2d 1321] [courts must construe statutes so as to avoid absurd consequences].) It does not do so for two reasons: the public policy underlying the statute is to ensure that the needs of public assistance recipients are met without interruption, and DSS has ample remedies available in cases of mistake or fraud.

---

[3]The relevant language added by amendment on July 7, 1993, stated: "Notwithstanding Sections 17091 and 17092 of the Government Code, the department, with the concurrence of the Controller, shall *issue regulations pertaining to the investigation* of lost or stolen warrants under this section *or Section 11006.6 and the issuance of replacement warrants. . . .*" (Italics added.) The amendment of August 16, 1993, deleted the italicized language and replaced it with the expression "provide for the replacement" of lost or stolen warrants.

The Legislature has declared the public policy rationale for section 29853.5 on the face of the statute: "When the affidavit has been signed by the legal owner or custodian of the warrant, the county shall issue a replacement warrant as soon as possible *to ensure that the needs of the family continue to be met . . . .*" (§ 29853.5, subd. (b), italics added.) To delay issuing a replacement warrant pending investigation, or to deny the warrant as a result of the investigation, would frustrate this express public policy.

Moreover, delay or refusal may well work an injustice on the statute's intended beneficiaries. Investigations do not always reach the correct result, particularly when done within such a short time frame as "five working days from the date that the affidavit has been signed and filed with the county. . . ." (§ 29853.5, subd. (b).) Here, in its brief DSS admits: "By virtue of having abandoned that portion of the judgment directed toward respondent's individual relief, appellant concedes that there may have been facts subject to dispute concerning respondent's entitlement to a relief replacement warrant." Thus, DSS admits that despite the findings of its investigation and the ALJ's determination in its favor at the administrative hearing, Beverly's affidavit could have been truthful after all. If so, it would follow that DSS's mistake forced her to go through many months of litigation to obtain the replacement warrant in September 1998, that she was entitled to as of January 1997.

If DSS investigates after issuing a timely replacement warrant and correctly determines that the recipient's affidavit was mistaken or fraudulent, it has numerous remedies under the applicable statutes. It can recoup any overpayment of benefits, whether due to mistake or fraud. (Welf. & Inst. Code, § 11004, subd. (c).) Where it believes fraud occurred, it can also file an action for welfare fraud to recoup as restitution any sums paid in reliance on the recipient's fraud. (Welf. & Inst. Code, § 11483.) Finally, in the appropriate case, it can recommend criminal prosecution. (Welf. & Inst. Code, § 10980.) These remedies are sufficient to protect the public fisc and to deter potential wrongdoers. So far as they impose an administrative burden on DSS, the Legislature has determined that that burden does not outweigh the need to ensure that public assistance recipients are not deprived of their legally mandated benefits.

For all the above reasons, we conclude that the statute means what it says. The trial court properly found that DSS has a mandatory duty under the statute to issue a replacement warrant within five working days after the claimant files a proper affidavit attesting to the loss of the original warrant, regardless of any investigation DSS might choose to do during that period.

## DISPOSITION

The judgment (order granting petition for writ of mandate) is affirmed. Beverly shall receive her costs on appeal.

Davis, J., and Nicholson, J., concurred.