Filed 12/13/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>CHASITY HOPE JOHNSON,<br><br>        Defendant and Appellant. | A163941<br><br>(Sonoma County<br>Super. Ct. Nos. SCR742965 &<br>SCR743422) |

A jury convicted appellant Chasity Hope Johnson of arson of a structure (Pen. Code, § 451, subd. (c)), and sustained the enhancement allegation that she had used a "device designed to accelerate the fire." (Pen. Code, § 451.1, subd. (a)(5)).[1] The offense involved pouring whiskey onto a structure (i.e., a house's cat door), as well as into the house through the same door, and lighting the whiskey on fire. The trial court sentenced Johnson to an aggregate term of five years in state prison. On appeal, she contends that the enhancement must be stricken because whiskey is not a "device designed to accelerate the fire" under the enhancement statute. We disagree, and we affirm.

---

[1] All undesignated statutory references are to the Penal Code.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2021, the Sonoma County District Attorney filed an amended information charging Johnson with one count of arson of an inhabited structure (§ 451, subd. (b)), two felony counts and three misdemeanor counts of animal abuse (§ 597, subd. (b)), and one count of misdemeanor vandalism (§ 594, subd. (a)). The information further alleged with respect to the arson charge that Johnson had used a device designed to accelerate the fire (§ 451.1, subd. (a)(5)). For purposes of this appeal, we need only focus on the evidence introduced at trial pertaining to the arson charge and the related enhancement.

In December 2020, Johnson met a man (who we identify as B.P.) and they became friends. She and B.P. spent several nights together in Santa Rosa. They also spent time at his family's house in Cotati, which was unfurnished and being remodeled. The relationship soon faltered as Johnson's behavior became erratic and B.P. tried to distance himself from her. During one confrontation, she broke the window of a car belonging to B.P.'s mother.

Subsequently, B.P. received text messages from an unknown number that he attributed to Johnson. One of the messages stated, "fuck the Cotati house that will soon be on fire." In a text from her own number, Johnson told B.P. to "Stop lying or we're going to have an explosion like no other."

On January 6, 2021, B.P. saw Johnson outside his Cotati house. The following day, a neighbor observed a woman matching Johnson's description exit a car and walk up the driveway to B.P.'s house while holding a plastic shopping bag. About 30 minutes later, the neighbor and her husband saw smoke coming from the back of the house and the husband called 911. B.P.

2

learned of the fire and told the police that he believed Johnson had started it, based on her prior behavior and the presence of trash at the arson scene that B.P. associated with her. Among other things, a partially burned white Styrofoam Cup of Noodles container was found at the scene.

The police arrested Johnson later that day and searched her vehicle. Inside her car, investigators found Cup of Noodles containers, an open whiskey bottle, and two torch lighters. The police verified that the whiskey was flammable by pouring it into a bowl, lighting it on fire with the propane torch, and holding a paper over it.

Rancho Adobe Fire District Battalion Chief/Fire Marshal Andy Taylor was the fire marshal at the scene and testified as a fire investigation expert. Taylor had observed pour patterns around the Cotati house's cat door, as well as inside the house directly through the cat door. He testified that the patterns appeared to be the result of a deliberate act because they were not fanned out or circular, as they would be if the liquid had spilled or leaked. He theorized that someone "took a liquid, a flammable liquid, and reached into the cat door and either hit the door … splashed it on the outside or poured completely through the cat door and then ignited it."

Taylor testified that an "accelerant" is "any kind of liquid that can propagate a fire," including gasoline, kerosene, or alcohol. He smelled gasoline at the scene, however, subsequent tests with two different detectors were negative for gasoline. He stated that these detectors do not reveal the presence of alcohol. He also testified that whiskey, in a high enough proof, is flammable. Although he was unable to determine the amount or type of flammable liquid used, he ruled out the possibility of a person pouring gasoline from a Cup of Noodles container because the gasoline would have dissolved the Styrofoam.

On September 13, 2021, the jury found Johnson not guilty of the charged arson offense, but found her guilty of the lesser included offense of arson of a structure (§ 451, subd. (c)). The jury also found true the arson enhancement, and found her guilty of vandalism. On the prosecutor's motion, the trial court dismissed the animal abuse counts due to a juror having contracted Covid-19 after the jury had reached a verdict on the other counts.

On November 3, 2021, the trial court sentenced Johnson to five years in prison comprised of the base term of two years, plus three years for the section 451.1, subdivision (a)(5) enhancement. This appeal followed.

## II.

## DISCUSSION

### A. Appellant's Contentions And Standard of Review

Johnson challenges the imposition of the arson enhancement, contending that whiskey does not qualify under section 451.1, subdivision (a)(5) as a " 'device designed to accelerate the fire' " that she started. She argues that under the subdivision's plain language, a liquid cannot be construed as a " 'device,' " nor is whiskey a substance that is " 'designed' " to accelerate a fire. To resolve the proper interpretation of the enhancement provision, we exercise de novo review. (*People v. Lofchie* (2014) 229 Cal.App.4th 240, 250.)

### B. Penal Code Section 451.1, Subdivision (a)(5)

Section 451.1, subdivision (a)(5) provides: "Notwithstanding any other law, any person who is convicted of a felony violation of Section 451 shall be punished by a three-, four-, or five-year enhancement if one or more of the following circumstances is found to be true: [¶] . . . . [¶] . . . . The defendant committed arson as described in subdivision (a), (b), or (c) of Section 451 and

4

the arson was caused by use of a *device designed to accelerate the fire* or delay ignition." (Italics added.)

Resolving Johnson's claim turns on discerning the meaning of the relevant text of section 451.1, subdivision (a)(5). We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189.) Their plain meaning controls, unless the words are ambiguous. (*People v. Gonzalez, supra,* at p. 1126.) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*Ibid.*)

## C. Relevant Case Law

The opinion in *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264 (*Kurtenbach*) is not only instructive, but mainly determinative in evaluating Johnson's claim. The defendant in *Kurtenbach* was charged with arson and a section 451.1, subdivision (a)(5) enhancement. (*Kurtenbach, supra,* at p. 1278.) The prosecutor's theory was that pouring gasoline on a house before the arson constituted the use of a device designed to accelerate the fire. (*Ibid.*) On appeal, the defendant contended that the use of gasoline did not support imposition of the enhancement. (*Id.* at p. 1271.) In affirming the conviction, the *Kurtenbach* court's interpretation of section 451.1 relied heavily on *People v. Andrade* (2000) 85 Cal.App.4th 579 (*Andrade*), the only published case at the time addressing the meaning of the phrase " 'use of a device designed to accelerate the fire.' " (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1279.)

In *Andrade,* evidence existed that the defendant started a fire either by using a Molotov cocktail or by breaking a gasoline-filled bottle by throwing it

on the floor and then lighting a match. (*Andrade, supra,* 85 Cal.App.4th at pp. 582, 585.) Finding that the phrase "device designed to accelerate the fire" is capable of more than one meaning, the court in *Andrade* construed the statutory language, an issue of first impression. (*Id.* at p. 585.) The court also found that the phrase " 'device designed to accelerate the fire' " had no technical legal meaning. (*Id.* at p. 587.) Surveying dictionary definitions of the operative words, the *Andrade* court concluded that a " 'device designed to accelerate the fire' " "means a piece of equipment or a mechanism intended, or devised, to hasten or increase the progress of the fire." (*Id.* at p. 587.) This definition is now fully incorporated in the jury instruction for §451.1. (See CALCRIM No. 1551 ["A device designed to accelerate the fire means *a piece of equipment or a mechanism* intended, or devised, to hasten or increase the fire's progress." (Italics added.)].) At oral argument, Johnson's counsel asserted that whiskey cannot be considered a "mechanism" because the dictionary defines "mechanism" as "a system of parts working together in a machine." While that is *one* definition of "mechanism," we note that Merriam-Webster Dictionary also defines "mechanism" as "a process or technique for achieving a result sometimes by cooperative effort." (Webster's 3d Internat. Dict. (2002) p. 1401.) Likewise, the Oxford English Dictionary possesses a definition (among others) for "mechanism" with the same connotation: "a piece of machinery (lit. or fig.) by means of which some particular effect is produced." (9 Oxford English Dict. (2d ed. 1989) p. 536.)

The *Kurtenbach* opinion then addressed a further application of *Andrade's* analysis: "Because *Andrade* involved the unique situation of a glass bottle thrown down and broken to disperse gasoline, it did not decide the more basic question presented here, namely whether using gasoline to fuel a fire—no matter how it is contained or dispersed—constitutes the use of

6

a device designed to accelerate the fire." (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1280.) Since it was "unclear from the statutory language whether the Legislature intended to include gasoline within the scope of devices designed to accelerate a fire," the *Kurtenbach* court turned to the legislative history to aid its interpretation. (*Ibid.*; *cf.* §18740 concerning possession, explosion or ignition with intent to injure or intimidate that mentions "destructive device" where §16460 then defines "destructive device".) *Kurtenbach* built its analysis on the foundation laid in *Andrade.* Noting the *Andrade* court's finding that the purpose of section 451.1 was to increase punishment for arsonists who show a specific intent to cause damage, the court in *Kurtenbach* found that "[b]ecause gasoline is used in connection with an arson to increase the strength and destructive power of the fire, it is consistent with the legislative intent to view the use of gasoline in connection with an arson as the use of a device designed to accelerate a fire within the meaning of the sentencing enhancement." (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1280.) Significantly, for our purposes, the *Kurtenbach* court's review of the legislative history led it to conclude "that the Legislature understood the use of a flammable liquid, such as gasoline, in connection with an arson, to constitute the use of a device designed to accelerate the fire within the meaning of the sentencing enhancement. Specifically, when discussing the types of conduct that would come within the sentencing enhancements created by the bill, an Assembly committee analysis referred to the act of setting a fire and 'using lighter-fluid to accelerate that fire.' (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as amended Aug. 10, 1994, p. 5.)" (*Kurtenbach, supra,* at p. 1280.)

   As a result, *Kurtzenbach* clarified: "As the use of gasoline in connection with an arson exhibits 'a specific intent to inflict damage' (*Andrade, supra,* 85

Cal.App.4th at p. 586) and is comparable to the use of lighter fluid to fuel a fire, we conclude based on the legislative history of section 451.1, subdivision (a)(5) that the act of pouring gasoline in a structure in connection with an arson is the 'use of a device designed to accelerate the fire' within the meaning of section 451.1, subdivision (a)(5)." (*Id.* at p. 1280.)

## D.    Analysis

Johnson disagrees with *Kurtenbach* and invites us to find, as a matter of law, that flammable liquids do not fall within the section 451.1, subdivision (a)(5) enhancement. We decline the invitation.

In arguing that liquids such as alcohol are excluded from the statute's scope, Johnson relies largely on the ultimate removal of references to "flammable liquids" found in the initial draft of the bill, Senate Bill No. 1309 that enacted section 451.1. The first draft of Senate Bill No. 1309 created the crime of aggravated arson, punishable by life in prison without possibility of parole, under certain aggravated circumstances including, "[t]he fire . . . was started using flammable liquids, other chemical agents intended to accelerate the fire, or a device designed to accelerate the fire or delay ignition." (Sen. Bill No. 1309, (1993-1994 Reg. Sess.) § 3; see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as amended April 4, 1994, p. 3.) This provision remained part of the proposed crime of aggravated arson until the bill was amended on May 2, 1994, which deleted the term "flammable liquids" from the offense. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as amended May 2, 1994, p. 3.) In this, and all subsequent versions of the bill, the reference to "flammable liquids" was omitted, and the reference to "a device designed to accelerate the fire or delay ignition" was used in the proposed sentencing enhancement that

8

became section 451.1.  (See *ibid.*; Sen. Bill. No. 1309 (1993-1994 Reg. Sess.) as amended Aug. 26, 1994, at p. 2; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as amended Aug. 10, 1994, p. 2.)

Johnson argues that the evolution of this statutory language reflects an intent to distinguish between flammable liquids, chemical agents, and devices designed to accelerate a fire, suggesting that if flammable liquids per se qualified as devices designed to accelerate a fire, then there would have been no reason to list them separately.  She further notes that neighboring arson statutes draw a distinction between liquids, substances, materials, and devices.  She faults the *Kurtenbach* court's analysis of the legislative history, arguing that the removal of the term "flammable liquids" from the statutory language most strongly indicates that the Legislature did not intend to allow enhancement punishment for fires caused by the use of such liquids.  She also contends that the term "designed to accelerate" does not refer to the way in which a particular defendant intended to use the device, but rather to the device's generally intended use.

Johnson's analysis is inconsistent with the general purpose of the enhancement, which is to provide enhancement punishment for arsonists who exhibit a specific intent to harm.  As the *Kurtenbach* court correctly concluded, the act of using a container to spread a flammable liquid—in that case gasoline—on a structure to be burned shows a specific intent to harm. We have little difficulty in concluding that using of whiskey, which contains alcohol and is also a flammable liquid, similarly shows a specific intent to harm.

It is true that "[t]he fact that the Legislature chose to omit a provision from the final version of a statute which was included in an earlier version constitutes strong evidence that the act as adopted should not be construed to

9

incorporate the original provision. [Citation.]" (*Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634.) However, this principle cannot help Johnson here. The reference to flammable liquids was not deleted from the enhancement that became section 451.1, but from the much more serious aggravated arson statute that was punished by life without parole in the initial version, and by 10 years to life when enacted. (§ 451.5, subd. (b).)

We also agree with *Kurtenbach's* reliance on the Assembly Committee on Public Safety analysis quoted in that case. The committee analysis addressed the proportionality of the proposed enhancements as follows: "This bill creates new enhancements … They may be subject to the same proportionality questions discussed … above [with respect to the underlying arson offenses]. For example, a person who sets fire to a building, seriously injuring several people in that building, is subject to the same three, four, or five year enhancement as a person who sets fire to a box full of old magazines, using lighter-fluid to accelerate that fire, but injuring nobody." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as amended Aug. 15, 1994, p. 4.) This comment shows a manifest intent to apply the enhancement to the use of flammable liquids, supporting the appellate courts' conclusions in *Andrade* and *Kurtenbach*.

Our review of the legislative history of the provision puts us in agreement with *Kurtenbach*; the Legislature intended for the enhancement to apply to the use of a flammable liquid to accelerate the fire found in that case, and the one before us.

We also reject Johnson's reliance on the rule of lenity. " ' " '[T]hat rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" [Citations.]' [Citation.] 'The rule of

10

lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' " [Citation.]' [Citation.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 611, italics omitted.) There is no "egregious ambiguity" regarding whether section 451.1, subdivision (a)(5) applies to a flammable liquid. The rule of lenity is therefore irrelevant to interpreting the provision.

Johnson lastly contends that whiskey does not qualify as a "device designed to accelerate the fire" because it is made to drink, not to start fires. We are not persuaded. Whiskey is comprised of alcohol, which similar to gasoline, is a flammable liquid. Moreover, gasoline also is not made to start fires, but rather is intended to be used as fuel for automobiles and other motorized machines. Yet, as established under *Kurtenbach*, gasoline falls within the scope of the enhancement provision.

In sum, we conclude that the trial court did not err in imposing the sentencing enhancement under section 451.1, subdivision (a)(5).

## III.

## DISPOSITION

The judgment is affirmed.

DEVINE, J.*

WE CONCUR:

MARGULIES, J.

BANKE, J.

A163941

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Sonoma County Superior Court

Honorable Chris M. Honigsberg

Leah Spero, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna Provenzano, Supervising Deputy Attorney General and Amit Kurlekar, Deputy Attorney General for Plaintiff and Respondent.