[No. B106500. Second Dist., Div. Two. Feb. 18, 1998.]

NORTH HOLLYWOOD PROJECT AREA COMMITTEE, Plaintiff and Appellant;
C. ROBERT FERGUSON, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

C. Robert Ferguson for Plaintiff and Appellant.

No appearance for Plaintiff and Respondent.

James K. Hahn, City Attorney, Dov S. Lesel, Assistant City Attorney, Ronald Low, Deputy City Attorney, Barbosa & Garcia, Jonathan B. Stone, Kenneth T. Fong and Peter E. Langsfeld for Defendants and Respondents.

McDonough, Holland & Allen and T. Brent Hawkins as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**FUKUTO, J.**—Plaintiff North Hollywood Project Area Committee (the PAC) appeals from a judgment and order of dismissal entered in favor of

defendants City of Los Angeles (the City) and its community redevelopment agency (the CRA) on July 24, 1996, after the trial court ruled against the PAC and its attorney, C. Robert Ferguson, on their fourth cause of action for declaratory relief and sustained defendants' demurrer to plaintiffs' remaining three causes of action without leave to amend. Challenging the trial court's decision on the declaratory relief cause of action, the PAC contends that under the terms of Health and Safety Code section 33388,[1] it need not accept an attorney chosen by the City, but is entitled to select its own legal counsel and have the cost thereof funded by the City, or by the CRA in accordance with the City's allocation.

## FACTS

There are no material disputes regarding the underlying facts in this case. In early 1993, the CRA sought recommendations and comments from the PAC relating to a proposed amendment to the North Hollywood Redevelopment Plan. On May 18, 1993, the PAC requested that the Los Angeles City Council (City Council) "provide funding of $10,000 for independent counsel to advise the PAC in both of its committees, the Plan Amendment Committee and the By-Laws Committee[,] with questions that may arise." The request was directed to the City Council's Community Redevelopment and Housing and Budget and Finance Committees. In its report of September 2, 1993, the Community Redevelopment and Housing Committee recommended that the City Council "receive and file" the PAC's request.[2] In support of its recommendation, the Community Redevelopment and Housing Committee noted that legal advice was available to the PAC through the Los Angeles City Attorney's Office, that the cost of funding independent counsel as requested by the PAC was potentially open-ended,[3] and that providing outside legal counsel for the PAC could be seen as setting a precedent for similar requests from PAC's or advisory committees in other redevelopment

[1] Section 33388 of the Health and Safety Code reads: "(a) Upon recommendation of the project area committee, funds as determined necessary by the legislative body for the operation of the project area committee shall be allocated to the committee by the legislative body. This allocation shall include *funds or equivalent resources for* a committee office, equipment and supplies, *legal counsel*, and adequate staff for the purposes set forth in Section 33386. [¶] (b) No funds allocated under this section shall be used for any litigation, other than litigation to enforce or defend the rights of the project area committee under this part." (Italics added.)

Unless otherwise indicated, all statutory references are to the Health and Safety Code.

[2] The report disclosed that "[b]ecause the subject was fully aired at [the Community Redevelopment and Housing] Committee's hearing, the Budget and Finance Committee Chair [had] waived the opportunity for a second committee review."

[3] As the report pointed out, the PAC's "$10,000 funding request [was] not based on a specific set of questions sought to be answered, nor [was] there any defined limit to the scope of legal services which the PAC [might] find advisable."

or revitalization areas. The full City Council adopted the recommendation of the Community Redevelopment and Housing Committee on September 8, 1993, and the PAC was so advised.

Despite the absence of City Council approval, on October 12, 1994, the PAC retained Attorney Ferguson to advise it in connection with its review of the proposed amendment to the North Hollywood Redevelopment Plan. The PAC subsequently submitted a claim to the City in the amount of $8,056.50 for Ferguson's services and when the claim was denied, the PAC and Ferguson sued to recover Ferguson's attorney fees and for declaratory relief in the form of an order and declaration that the PAC "is entitled to employ the services of independent counsel of it's [sic] choice pursuant to a majority vote of it's [sic] members and that compensation for said attorney shall be provided by Defendant City of Los Angeles."

The CRA and the City thereafter demurred to the complaint and, on the date set for hearing the demurrer, the first three causes of action seeking payment of money were ordered stayed and the declaratory relief cause of action was set for a court trial. Following an evidentiary hearing, in which the trial court received various legislative materials, the court issued its written statement of decision on May 30, 1996. It provided in relevant part as follows:

"The purpose of a PAC is to consult with and give advice to a community redevelopment agency ([§] 33386). Whether the interests of a PAC may at times conflict with those of the CRA, nothing in the history of this lawsuit suggests that such a conflict gave rise to the employment of [A]ttorney Ferguson. Moreover, no case law has been advanced that suggests there is an 'inherent conflict' between the two entities. The plaintiffs have not cited any provision of statute that permits the PAC to employ counsel, notwithstanding the wishes of the local legislative body[, i.e., the City Council]. By City ordinance, LAMC 8.99.03 [sic, Los Angeles Administrative Code section 8.99.03], only the City Council may approve the selection of specialized attorney services.

"Prior to the passage of [Assembly Bill No.] 35, which in 1977 amended [section] 33388 to include funding for a PAC's attorney, State Senator Alfred E. Alquist sought the opinion of the Office of Legislative Counsel as to the following question: 'If [Assembly Bill No.] 35 is enacted, would the local legislative body be able to provide legal counsel of their choice to a project area committee as an equivalent resource, rather than allocating funds to the project area committee for legal counsel?'

"Legislative Counsel responded in part, '. . . [W]e think that the authority vested in a legislative body to provide equivalent resources rather than funds would be sufficiently broad to permit a local legislative body to provide legal counsel of their choice to a project area committee as an equivalent resource, rather than allocating funds to the project committee for a legal counsel' [citation]. Thus, the legislative history of the statute clearly suggests the City's offer of the City Attorney, as opposed to the approval of funds for the retention of [Attorney] Ferguson, was an option contemplated by the legislation.

"Although the plaintiffs have cited several bill summaries by various state departments and other bodies, such citations do not address the 'equivalent resources' language within the statute. Rather, these sources briefly describe rather than dissect the language of the section. Therefore, particularly as here, where there is no allegation of a [*sic*] an actual conflict created by dual representation of the CRA and the North Hollywood PAC, this court is satisfied that the City Council's offer of the equivalent services of the City Attorney was consistent with the option provided under [section] 33388."

## DISCUSSION

■ We believe the "equivalent resources" language used in section 33388 clearly and unambiguously authorizes a city council to assign an attorney to a project area committee, as an alternative to allocating funds so that outside counsel may be hired to provide legal services to the project area committee. Consequently, "there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. [Citation.]" (*Quarterman* v. *Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].)

Nonetheless, if we were to turn to the statute's legislative history for guidance, we would reach the same conclusion the trial court did on precisely the same grounds. As the trial court's statement of decision makes manifest, the very question raised in this litigation was presented to the Legislative Counsel during the pendency of Assembly Bill No. 35, 1977-1978 Regular Session, and in his opinion letter of February 24, 1977, the Legislative Counsel opined that if the measure as amended in the Assembly on January 17, 1977, were enacted, "the local legislative body would be able to provide legal counsel of their choice to a project area committee as an equivalent resource, rather than allocating funds to the project area committee for legal counsel." Although Assembly Bill No. 35 underwent further amendment on the very day the Legislative Counsel issued his letter and subsequently, the language analyzed in the opinion letter was not altered.

Under the circumstances, we find the Legislative Counsel's construction persuasive. Though not binding, opinions of the Legislative Counsel are entitled to great weight, "since they are prepared to assist the Legislature in its consideration of pending legislation," and it is assumed the Legislature will undertake corrective measures if the Legislative Counsel's interpretation misstates the legislative intent. (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].)

The sampling of language relied upon by the PAC, to the effect that Assembly Bill No. 35 would authorize employment of legal counsel by the project area committee or would provide the project area committee with funds to hire a lawyer, does not persuade us otherwise. As the trial court correctly recognized, the cited legislative materials briefly describe the bill's provisions. They do not purport to address the import of the phrase "equivalent resources," which is at issue here.

Having decided that a local legislative body is entitled under section 33388 to provide a project action committee with an attorney of the local legislative body's own choosing, one additional question remains for resolution on this appeal, whether an inherent conflict of interest arises when the attorney selected is from the city attorney's office. Although the matter is not entirely free from doubt, we hold it does not. Given the fact that a project area committee operates in an advisory capacity and lacks independent decisionmaking authority in the redevelopment process,[4] we agree with defendants that a project area committee should be subject to "the general proposition that a public attorney's advising of a constituent public agency does not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part." (*Civil Service Com.* v. *Superior Court* (1984) 163

---

[4]Section 33386 specifies, "The redevelopment agency through its staff, consultants, and agency members shall, upon the direction of and approval of the legislative body consult with, and obtain the advice of, the project area committee concerning those policy matters which deal with the planning and provision of residential facilities or replacement housing for those to be displaced by project activities. The agency shall also consult with the committee on other policy matters which affect the residents of the project area. The provisions of this section shall apply throughout the period of preparation of the redevelopment plan and for a three-year period after the adoption of the redevelopment plan, subject to one-year extensions by the legislative body."

In addition, the Community Redevelopment Law provides that the redevelopment agency must submit the redevelopment plan and any amendments to the project area committee for review and the project area committee may, if its chooses, prepare a report and recommendations for submission to the legislative body. (§§ 33347.5, 33385.5.) If the project area committee opposes adoption of the redevelopment plan or proposed amendment, the legislative body may adopt the plan or amendment only by a two-thirds vote of its entire membership. (§§ 33366, 33385.5.)

Cal.App.3d 70, 78 [209 Cal.Rptr. 159].) Without a separate attorney-client relationship, there can be no conflict of interest.

In so holding, we stress, as did the trial court at the hearing on plaintiffs' motion for new trial, that in light of the function of a project area committee, it is difficult to envision a scenario in which an actual conflict of interest would exist between that body and the body to which it offers advice so as to entitle the advisory group to independent counsel. The trial court postulated that a right to retain counsel might arise in the "very extraordinary situation" where a program area committee had been "totally shut out" of the redevelopment process in contravention of the relevant redevelopment statutes and wanted to apply to the trial court for a writ of mandate. We need not reach this issue in the instant case, however, because there was no evidence that Attorney Ferguson was retained as a result of such circumstances. Consequently, we conclude the PAC lacked the authority under section 33388 to independently contract for legal services after the City Council denied its request for outside counsel.

### Disposition

The judgment and order of dismissal entered in favor of defendants are affirmed.

Boren, P. J., and Zebrowski, J., concurred.