130 Cal.Rptr.2d 483 (2003)
106 Cal.App.4th 73
Rowdy ELSNER, Plaintiff and Respondent,
v.
Carl UVEGES, Defendant and Appellant,
State Compensation Insurance Fund, Intervenor and Appellant.
No. D037761.
Court of Appeal, Fourth District, Division One.
January 13, 2003.
*485 Bonesteel & Associates, Summers & Shives, Scott M. Bonesteel, San Diego, Jodi E. Lambert for defendant and appellant.
Singleton & Associates, Terry Singleton, Escondido, Horatio Barraza; Daniel U. Smith, Los Angeles, for plaintiff and respondent.
Marguerite I. Delbourgo, Santa Ana, for Intervenor and Appellant. *484
*486 O'ROURKE, J.
In this case we are asked to decide whether the Legislature, when it amended Labor Code section 6304.5[1] in 1999, repealed the long-standing rule prohibiting consideration of regulations of the California Occupational Safety and Health Act (Cal-OSHA) in tort actions by employees against parties other than their own employers for injuries suffered in the workplace. Defendant Carl Uveges appeals a judgment entered in favor of plaintiff Rowdy Eisner and intervenor State Compensation Insurance Fund (State Fund) on Eisner's complaint for personal injuries stemming from a construction site accident. Uveges contends the trial court prejudicially erred by (1) permitting into evidence purported violations of Cal-OSHA standards under a misinterpretation and improper retroactive application of sections 6304.5 and 6400; (2) misinstructing the jury on the definition of employer; and (3) denying his motion in limine seeking to exclude reference to Cal-OSHA standards, and on that basis improperly excluding Uveges's proposed evidence of industry custom and practice. State Fund also appeals the judgment, contending the damage award in its favor does not correctly reflect medical expense damages to which it is statutorily entitled under section 3852.
Based on our interpretation of the statute, we conclude section 6304.5 does not permit introduction of Cal-OSHA safety standards or orders into evidence in employee third party personal injury actions,[2] and that the trial court therefore erred in allowing use of such regulations to prove the standard of care and establish a presumption of negligence in this case. We conclude the court's error was prejudicial because it resulted in the exclusion of evidence pertaining to the custom and practice of scaffold assembly in the single family residential construction industry, depriving Uveges of a critical defense to Eisner's negligence claim based on Uveges's common law duties of care. Accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On December 3, 1998, Eisner, a roofer employed by Hoffman Roofing, was injured when a scaffold failed beneath him at a construction site in the city of Coronado. Uveges was the general contractor for the projecta pair of two-story, single family homes. The day before the accident, Sean Frey, a carpenter employed by Uveges, had constructed the temporary wood plank scaffold to assist his installation of plywood panels to the second story of the structure. Frey used an approximately 14-foot-long, two-by-ten-inch plank, attaching one end to a sloping roof by a single three-and-one-half inch-long nail and the other end to a window ledge with another single nail. Frey did not drive the nails in fully, leaving one of them approximately five-eighths of an inch up, so that he could later pry them up in order to remove the scaffold. He supported the scaffold with a center support consisting of a 12-foot-long two-by-four resting on an overturned truss lying on the ground below; he attached the base of the support to the truss using a single nail driven at an angle.
*487 Uveges acknowledged he had the direct responsibility to supervise and control the work in order to ensure required safety practices were followed, by either talking to the subcontractors' employees or otherwise ensuring the subcontractors took required safety precautions. On this job, he did not have a written safety program nor did he conduct formal safety meetings with his workers, instead he would say something only if he saw unsafe activities. Because Uveges considered Frey an experienced carpenter, Uveges did not feel he had to check his work for safety purposes; he expected Frey to be able to build a scaffold correctly. Uveges did not see Frey build the scaffold and he did not inspect it before the accident. According to Frey, Uveges did not have a practice of inspecting scaffolds he had built.
Eisner sued Uveges and Uveges's joint venturer on the project asserting causes of action for negligence, premises liability, breach of non-delegable duty, failure to provide a safe place of work and peculiar risk. State Fund intervened in the lawsuit seeking reimbursement for workers' compensation benefits paid to Eisner.
Before trial, Uveges moved in limine for an order to exclude references to OSHA regulations and their alleged violation. He argued expert or other testimony that the scaffolding violated Cal-OSHA regulations or safety orders was inadmissible for any purpose in an employee's third party action under section 6304.5 as applied by Spencer v. G.A. MacDonald Construction Co. (1976) 63 Cal.App.3d 836, 134 Cal.Rptr. 78, and Mackey v. Campbell Construction Co. (1980) 101 Cal.App.3d 774, 162 Cal. Rptr. 64. He also argued the mention of a Cal-OSHA violation without supporting evidence would unduly prejudice him by permitting the jury to impermissibly infer wrongdoing. The trial court denied the motion.
The matter proceeded to jury trial against Uveges only. Based on its in limine ruling, the court permitted testimony by Eisner's experts as to how the scaffold violated Cal-OSHA requirements. Having granted a separate evidentiary motion made by Eisner during trial, the court also prevented Uveges from eliciting expert testimony that the scaffold as constructed was customary and met the standard of care for such construction jobs. It gave the jury special instructions based on provisions of the Labor Code (sections 6400, 6401 and 6403[3]), including an instruction defining the term employer as used in those sections for multiemployer worksites,[4] as well as portions of particular Cal-OSHA *488 regulations relating to housekeeping at the site and requirements for nailing, anchoring, size and railing of scaffolds. (Cal.Code Regs, tit. 8, §§ 1513, 1637, 1640.) The court instructed the jury with a modified version of BAJI No. 3.45 as follows: "If you find that a party to this action violated Labor Code sections 6400, 6401, 6403, 7151, [Cal-]OSHA Regulations 1513, 1637 and/or 1640, the statutes and regulations just read to you and that any such violation was a cause of injury to another, you will find that such violation was negligence unless defendant proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, such party must prove by a preponderance of the evidence that he was faced with circumstances which prevented compliance or justified noncompliance with the statute or regulation."
The jury returned a special verdict finding Uveges 100 percent negligent and his negligence a cause of Eisner's injuries. It found Eisner's employer was not negligent. In addition to costs, the jury awarded Eisner $131,254 in economic and $500,000 in noneconomic damages. It awarded State Fund $52,867.71. Both Uveges and State Fund appeal.

DISCUSSION

I. OSHA Standards Remain Inadmissible in Third Party Actions under Section 6304.5

Uveges contends the trial court prejudicially erred by interpreting section 6304.5 as permitting admission of OSHA safety standards and orders into evidence in this third party action for purposes of establishing the standard of care and creating a presumption of negligence for violation of those standards. In part, he maintains the court's interpretation is contrary to the statute's plain language and to legislative history that demonstrates the Legislature, while it originally considered permitting use of such evidence, in the end preserved the rule barring admission of such evidence in third party civil actions. As we explain, although the statute suffers from ambiguity, section 6304.5's legislative history compels us to agree with Uveges and reject the trial court's interpretation.

A. Background

We begin with an overview of the law leading up to the Legislature's introduction of Assembly Bill (AB) 1127, which amended several provisions of the Labor Code, including section 6304.5 addressing admissibility of Cal-OSHA regulations and orders in personal injury and wrongful death actions. Former section 6304.5, applicable to personal injury or wrongful death actions arising after April 1, 1972, provided: "It is the intent of the Legislature that the provisions of this division [Division 5, sections 6300 through 9000 et seq, entitled "Safety in Employment"] shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) [entitled "Responsibilities and Duties Between Employers and Employees"] and 4 (commencing with Section 6600) [entitled "Appeal Proceedings"] of Part 1 of this division for the exclusive purpose of mamtaining and enforcing employee safety. [¶] Neither this division nor any part of this division shall have any *489 application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." (Stats.1971, ch. 1751 (A.B.676), § 3, p. 3780, eff. April 1, 1972; Arbaugh v. Proctor & Gamble Mfg. Co. (1978) 80 Cal.App.3d 500, 511, fn. 5, 145 Cal.Rptr. 608.)[5]
Under the plain language of former section 6304.5, reference to and introduction of Cal-OSHA standards and safety orders were expressly limited to actions between employers and their own employees; this court and others interpreting the section logically concluded such regulations and their violation specifically could not be considered in evidence in an employee's third party action. (Widson v. International Harvester Co. (1984) 153 Cal.App.3d 45, 51-52, 200 Cal.Rptr. 136 ["Every appellate court in the State of California which has considered the question of legislative intent of this section has concluded Cal-OSHA regulations are not applicable to nor admissible in an employee's action against a third person not his or her employer"]; Salinero v. Pan (1981) 124 Cal. App.3d 120, 130-131, 177 Cal.Rptr. 204 ["The language of [former] section 6304.5 is abundantly clear; the provisions of division 5 of the Labor Codewhich include the statute appellant sought to have admitted into evidenceare not admissible in any third party actions by an employee"]; Rodriguez v. McDonnell Douglas Corp. (1978) 87 Cal.App.3d 626, 651, fn. 14, 151 Cal.Rptr. 399; Brock v. State of California (1978) 81 Cal.App.3d 752, 757-758, 146 Cal.Rptr. 716; Spencer v. G.A. Mac-Donald Construction Co., supra, 63 Cal. App.3d at p. 857, 134 Cal.Rptr. 78; Vallas v. City of Chula Vista (1976) 56 Cal. App.3d 382, 387, 128 Cal.Rptr. 469 [presumption of negligence arising from violation of safety orders not applicable except as between employee and employer], disapproved on other grounds in Peterson v. City of Long Beach (1979) 24 Cal.3d 238, 245, fn. 5, 155 Cal.Rptr. 360, 594 P.2d 477.)
The rationale behind the Legislature's actions was most thoroughly discussed in Spencer v. G.A. MacDonald Construction Co., supra, 63 Cal.App.3d 836, 134 Cal. Rptr. 78, in response to arguments by amici curiae that section 6304.5 violated *490 the equal protection and due process provisions of the federal and state Constitutions. (Id. at p. 852, 134 Cal.Rptr. 78.) There, the court explained: "Division 5 of the Labor Code ("Safety in Employment") reduces or eliminates the need for the parties to resort to common law negligence to prove liability in certain cases because in those cases violations of safety orders found in the Administrative Code are admissible in evidence and could constitute negligence per se. [Citation.] However, section 6304.5 makes obvious the Legislature's intent to restrict the admissibility of those safety code orders only to safety cases (Lab.Code, § 6500 et seq. and § 6600 et seq.), and to personal injury or wrongful death cases between an employee and the party most directly concerned with his safetyhis own employer. In other suits brought by the employee, he, like other personal injury litigants, must prove his case under the rules of common law negligence. To allow the admissibility of safety code orders to carry over to the latter kind of suit would discriminate against other personal injury plaintiffs for, by reducing or eliminating the need to prove his case under common law negligence, it would place an employee in a special, protected status vis-a-vis third persons, although employees are not a suspect classification, nor is the admissibility of safety orders a fundamental right." (Spencer v. G.A. MacDonald Construction Co., 63 Cal.App.3d at pp. 854-855, 134 Cal.Rptr. 78, italics added.) The California Supreme Court later agreed with Spencer's reasoning and its resultant holding that section 6304.5 was not unconstitutional on equal protection grounds. (Griesel v. Dart Industries, Inc. (1979) 23 Cal.3d 578, 588, 153 Cal.Rptr. 213, 591 P.2d 503, overruled on other grounds in Privette v. Superior Court (1993) 5 Cal.4th 689, 696, 702, 21 Cal.Rptr.2d 72, 854 P.2d 721.)
Former section 6304.5's prohibition on admission of Cal-OSHA standards extended to theories beyond negligence to that of nondelegable duty; thus, an injured employee was prohibited from suing a third party general contractor or premises owner for breach of any nondelegable duty to comply with applicable Cal-OSHA requirements. (See, e.g., Felmlee v. Falcon Cable TV (1995) 36 Cal.App.4th 1032, 1039, 43 Cal.Rptr.2d 158; Smith v. ACandS, Inc. (1994) 31 Cal.App.4th 77, 89-91, 37 Cal.Rptr.2d 457.) But that did not prevent the employee from maintaining an action against the third party for breach of other non-OSHA-based nondelegable duties, or breach of its common law duties of due care. (See Felmlee v. Falcon Cable TV, at p. 1040, 43 Cal.Rptr.2d 158 [notwithstanding plaintiffs inability to rely on non-delegable duty doctrine, jury was "free to consider whether [general contractor] was directly negligent in failing to correct any foreseeable, dangerous condition ... which may have contributed to the cause of [plaintiffs] injuries"]; Smith v. ACandS, Inc., supra, 31 Cal.App.4th at p. 97, 37 Cal.Rptr.2d 457 [court of appeal reversed judgment against premises owner PG & E for injuries sustained by plaintiff who was not PG & E's own employee due to errors concerning claims of negligence per se and vicarious liability but remanded for retrial on general contractor's general negligence], disapproved on other grounds in Camargo v. Tjaarda Dairy (2001) 25 Cal.4th 1235, 1242-1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096.)

B. Assembly Bill No. 1127

AB 1127, signed into law in October 1999, amended Cal-OSHA in several significant ways, including to substantially expand civil and criminal penalties for willful, serious and repeated violations of Cal-OSHA regulations and safety orders. (Stats.1999, c. 615 (A.B.1127), § 2.) Pertinent *491 here are the amendments to sections 6304.5 and 6400. As amended, section 6304.5, entitled "Applicability of division to proceedings on employee safety; evidence in personal injury and wrongful death actions," provides:
"It is the intent of the Legislature that the provisions of this division, and the occupational safety and health standards and orders promulgated under this code, are applicable to proceedings against employers for the exclusive purpose of maintaining and enforcing employee safety.
"Neither the issuance of, or failure to issue, a citation by the division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action, except as between an employee and his or her own employer. Sections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation. The testimony of employees of the division shall not be admissible as expert opinion or with respect to the application of occupational safety and health standards. It is the intent of the Legislature that the amendments to this section enacted in the 1999-2000 Regular Session shall not abrogate the holding in Brock v. State of California (1978) 81 Cal.App.3d 752, [146 Cal.Rptr. 716]."
Section 6400 is entitled "Safe and healthful employment and place of employment." The Legislature made nonsubstantive changes to section 6400's general statement of the employer's statutory duty of care with respect to a safe workplace: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." (§ 6400, subd. (a).) The Legislature created new subdivision (b), incorporating almost verbatim a Cal-OSHA regulation designating citable employers at multiemployer worksites. (Cal.Code Regs. tit. 8, § 336.10.[6]) Subdivision (b) of section 6400 provides: "On multiemployer worksites, both construction and non-construction, citations may be issued only to the following categories of employers when the division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the division: [¶] (1) The employer whose employees were exposed to the hazard (the exposing employer). [¶] (2) The employer who actually created the hazard (the creating employer), [¶] (3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite; i.e., the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer). [1] (4) The employer who had the *492 responsibility for actually correcting the hazard (the correcting employer). [¶] The employers listed in paragraphs (2) through (4), inclusive, may be cited regardless of whether their own employees were exposed to the hazard." (§ 6400, subd. (b).)
New subsection (c) of section 6400 expresses the Legislature's intent behind this addition: "(c) It is the intent of the Legislature, in adding subdivision (b) to this section, to codify existing regulations with respect to the responsibility of employers at multiemployer worksites. Subdivision (b) of this section is declaratory of existing law and shall not be construed or interpreted as creating a new law or as modifying or changing an existing law." (§ 6400, subd. (c).)

C. Analysis

With this background, we turn to the question at hand: whether section 6304.5 as amended now permits introduction of Cal-OSHA regulations or safety orders in evidence against a third party tortfeasor. Resolution of this issue turns on statutory construction. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we `"select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (Day v. City of Fontana (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196.)
Section 6403.5 contains two separate unnumbered paragraphs, each having express statements of Legislative intent. In the first, the Legislature manifested its intent that provisions of Division 5 and Cal-OSHA standards and orders be applicable to "proceedings against employers" for the sole purpose of maintaining and enforcing employee safety. Section 6304, directly preceding section 6304.5, defines the term "employer" for purposes of Cal-OSHA and provides it shall have the same meaning as in section 3300. Section 3300 broadly defines "employer" in the workers compensation law to mean: "(a) The State and every State agency, (b) Each county, city, district, and all public and quasi public corporations and public agencies therein, (c) Every person including any public service corporation, which has any natural person in service, (d) The legal representative of any deceased employer." Eisner does not contend Uveges falls under section 6304's definition of employer and, indeed, Uveges' status as general contractor (not Eisner's employer) takes him outside the provision's definition.[7] In view of the *493 Legislature's unambiguous definition of "employer" under section 6304, we are compelled to conclude Eisner's action against Uveges is not a "proceeding against [an] employer[]" within the meaning of the Labor Code and thus, Cal-OSHA standards and orders are generally not "applicable" to the action.
Turning to the second paragraph of section 6304.5, we encounter ambiguity. One might argue that the separate paragraphs of section 6304.5 indicate the Legislature meant to set forth separate evidentiary standards for different proceedingsone (in the first paragraph) for administrative proceedings against employers (i.e., proceedings against employers "for the sole purpose of enforcing employee safety"), and another (in the second paragraph) for personal injury and wrongful death actions. Thus, section 6304.5's second paragraph might be interpreted as a provision limited to personal injury or wrongful death actions, essentially providing that in such actions: (1) neither the issuance of, or failure to issue, a citation by the division shall have any application to, nor be considered in, nor be admissible into, evidence, except as between an employee and his or her own employer; and (2) Evidence Code sections 452 and 669 shall apply [to those actions] in the same manner as any other statute, ordinance, or regulation. As we explain, however, this interpretation would conflict with the Legislature's second expression of intent in that paragraph, namely, that its amendments shall not abrogate the holding of Brock v. State of California, supra, 81 Cal.App.3d 752, 146 Cal.Rptr. 716 (Brock).
Brock arose out of an explosion at a plant resulting in the injury or death of several employees. The plaintiffs filed personal injury actions against certain defendants including the State of California, in part alleging the State had a mandatory, non-delegable duty to inspect the plant to ensure it was a reasonably safe place to work but failed to do so in violation of Labor Code regulations and other Cal-OSHA provisions. (Brock, supra, 81 Cal. App.3d at pp. 755-756, 146 Cal.Rptr. 716.) The State successfully demurred to the complaint on the ground former section 6304.5 prevented reliance on Cal-OSHA provisions as a basis for a personal injury or wrongful death action. (Brock, at pp. 755-756, 146 Cal.Rptr. 716.)
*494 Pointing to former section 6304.5's language and case law limiting the applicability, consideration or admissibility of Cal-OSHA standards and safety orders to actions between an employee and his or her own employer, the Court of Appeal affirmed. It stated: "The fact that the state has a mandatory duty to inspect and to enforce CAL/OSHA provisions is irrelevant to the issue of whether those provisions can be relied upon in a personal injury action against the state when the state is not the employer. It is evident that the purpose of [former] section 6304.5 is to prevent the technical CAL/OSHA safety provisions from enlarging the personal injury liability of third parties beyond basic common law liability." (Brock, supra, 81 Cal.App.3d at p. 757, 146 Cal. Rptr. 716, italics added.) The court reasoned that the Legislature did this because day-to-day operating control over safety conditions rests with the employer alone: "Since third parties, including the state, are not in control of such day-to-day operations, and cannot be (even if hordes of inspectors were to be hired), the Legislature sensibly limited the applicability of the CAL/OSHA safety provisions to actions involving employers alone. [¶] This has nothing to do with sovereign immunity, upon which plaintiffs premise their argument. [Former] section 6304.5 does not undertake by its terms to immunize the state from suits by injured employees based on common law liability (or even based on violations of duty under statutes other than CAL/OSHA). It merely requires that the provisions of CAL/OSHA shall have no `application to, nor be considered in, nor be admissible into, evidence ... `in such suits, or other third party suits." (Brock, at pp. 757-758, 146 Cal. Rptr. 716, italics added.) Because the plaintiffs' allegations against the state were based on CAL/OSHA provisions, the court ruled the demurrers were properly sustained. (Id. at p. 758, 146 Cal.Rptr. 716.)
We read section 6304.5's second paragraph in context with its first paragraph, and to comport with Brock. (Pacific Gas & Electric Co. v. County of Stanislaus (1997) 16 Cal.4th 1143, 1152, 69 Cal. Rptr.2d 329, 947 P.2d 291 [when statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes]; Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230, 110 CalRptr. 144, 514 P.2d 1224 [statutory language must be viewed in context keeping in mind the nature and obvious purpose of the statute where the words appear]; In re Cathey (1961) 55 Cal.2d 679, 689, 12 Cal.Rptr. 762, 361 P.2d 426 [rules of statutory construction will not be utilized to contradict or vary a clear expression of legislative intent].) In so doing, we interpret its references to Evidence Code sections 452 (judicial notice) and 669 (failure to exercise due care) as reflecting an intent that these evidentiary standards govern the introduction into evidence of Cal-OSHA violations in those proceedings in which Cal-OSHA regulations and orders applyproceedings against employers as defined in section 6304. This interpretation is consistent with the Legislature's aim to preserve Brock's holding, under which personal injury liability of parties not having day-to-day control over safety is confined to basic common law liability. Further, since it is in keeping with a long-standing, judicially sanctioned, exception to the general rule permitting evidence of governmental regulations and ordinances to prove negligence, construction of section 6304.5 in this manner cannot lead to an absurd or unintended result.[8]
*495 Eisner contends the Legislature only intended to preserve Brock's "narrow holding"that Cal-OSHA provisions are inadmissible in a suit against the state. He further maintains that had the Legislature intended to bar reference to safety violations by any defendant and not just the state, it would have expressly retained the holdings of the cases relied upon by Brock. We are not persuaded by these arguments for several reasons. First, Brock's language makes plain that the court's holding did not turn on the fact the State was a governmental entity having any particular duty under Cal-OSHA. (Brock, supra, 81 Cal.App.3d at p. 758, 146 Cal.Rptr. 716 ["This has nothing to do with sovereign immunity"].) Rather, its holding turned solely on the fact the State was not the plaintiffs' employer having day-to-day operating control over safety, and under those circumstances, section 6304.5 prevented provisions of Cal-OSHA from being considered or admitted in the plaintiffs' personal injury action. In our view, the decision contains no other rational holding the Legislature could have intended to preserve by its reference to Brock. Second, we will not read from Legislative silence an intent to overturn a substantial line of authority in line with Brock; to the contrary, had the Legislature intended to abrogate decisions such as Spencer v. G.A MacDonald Constr. Co., supra, 63 Cal. App.3d 836, 134 Cal.Rptr. 78, as respondents' urge it did, it would have so stated, as it has in other contexts. (See, e.g. Civ.Code, § 1714, subd. (a).) Third, Elsner's interpretation of the statement of legislative intent to preserve Brock's holding would carve out an exception tending to conflict with the Legislature's concurrent repeal of a provision immunizing the State from civil penalties. (Stats.1999, c. 615 (A.B.1127), § 11, p. 3513.) Until the Legislature rewrote the provision in 1999, former section 6434 provided: "The civil penalties provided for in this chapter shall not be assessed against employers that are governmental entities." Following AB 1127's passage, the State is subject to civil penalties for its safety violations as are other employers and third parties, and nothing in the statute exempts it from the effects of section 6304.5 as long as it is an employer as defined in section 6304.

D. Legislative History does not Compel a Different Result

Our consideration of the relevant legislative history does not change our conclusion. To the contrary, in our view it indicates lawmakers were ultimately persuaded to reject the expansion of civil negligence liability to third party defendants based on an alleged violation of Cal-OSHA regulations.
As originally drafted, Assembly Bill No. 1127 amended section 6304.5 pertaining to admissibility of Cal-OSHA standards and orders to expressly permit such standards and orders (but not evidence of citations or the lack of citations) to be introduced into evidence in any personal injury and wrongful death action. (Assem. Bill. No. 1127 *496 (1999-2000 Reg. Sess.) as introduced Feb. 25, 1999.) In part, the initial version of section 6304.5 read: "Neither the issuance of, or failure to issue, a citation by the division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action except as between an employee and his or her own employer. This division and the occupational safety and health standards and orders promulgated under this code may have application to, be considered in, or be admissible into, evidence in any personal injury or wrongful death action." (Ibid., some italics and strikeouts omitted.) The plain effect of the italicized language, as reflected by an Assembly Bill analysis dated April 14, 1999, was to repeal the law barring admission of Cal-OSHA safety regulations and standards into evidence for purposes of establishing the standard of care. (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 1127 (1999-2000 Reg. Sess.) as introduced February 25, 1999, p. 6.)[9]
In August 1999, the Senate deleted the above italicized language and replaced it with the following provision: "Sections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation." (Sen. Amend, to Assem. Bill No. 1127 (1999-2000 Reg. Sess.) August 23, 1999.) Neither the text of the amendment, nor the legislative history provided by the parties, sheds light on the reason for this change.
On September 2, 1999, the Senate added the following language to the amended text of section 6304.5: "The testimony of employees of the division shall not be admissible as expert opinion or with respect to the application of occupational safety and health standards." The next day, the Senate made its final amendment to the bill, adding the statement: "It is the intent of the Legislature that the amendments to this section enacted in the 1999-2000 Regular Session shall not abrogate the holding in Brock v. State of California (1978) 81 Cal.App.3d 752, 146 Cal.Rptr. 716." The Legislative Council's Digest in the chaptered text of the bill gives no guidance as to the impetus for this final addition. Indeed the Legislative Counsel's Digest fails to mention Brock at all.
This sequence of events persuades us the Legislature, ultimately, decided to maintain the prohibition on use of Cal-OSHA safety orders and standards in employees' personal injury cases against third party defendants. We focus on the fact lawmakers once proposed a provision unambiguously stating otherwise, but deleted it when the bill was passed: "`The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision.'" (Beverly v. Anderson (1999) 76 Cal. App.4th 480, 485-486, 90 Cal.Rptr.2d 545; see also California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 845-846, 157 Cal.Rptr. 676, 598 P.2d 836.) "Similarly, `[t]he fact that the Legislature chose to omit a provision from the final version of a statute which was included in *497 an earlier version constitutes strong evidence that the act as adopted should not be construed to incorporate the original provision.'" (Beverly v. Anderson, at p. 486, 90 Cal.Rptr.2d 545.) Id. Eisner points out that at the same time this provision was deleted, the Legislature inserted other language (the provision as to Evidence Code, sections 459 and 669) stating the same principle in another way. While one could argue under this circumstance the established rule regarding deletion of a provision does not govern (See El Dorado Palm Springs, Ltd. v. City of Palm Springs (2002) 96 Cal.App.4th 1153, 1170, 118 Cal.Rptr.2d 15), we believe the Legislature put any such notion to rest by its later reference to Brock. Further, the final Legislative Council's Digest omitted the statement that the bill repealed the long-standing exception to the rule permitting use of government regulations and ordinances to prove negligence.[10]
Nor does a later opinion by the Legislative Counsel as to the meaning of Assembly Bill No. 1127's amendments change our conclusion. In April 2000, six months after the Governor signed Assembly Bill No. 1127 into law, the Office of Legislative Counsel issued an opinion on the effect of the amendments to sections 6304.5 and 6400. (Ops. Cal. Legis. Counsel, No. 6490 (April 5, 2000) Cal-OSHA: Employer Liability, pp. 1, 4.) Legislative counsel opined (1) as to section 6304.5, the Legislature authorized Cal-OSHA statutory and regulatory standards to be admissible under sections 452 and 669 of the Evidence Code in actions by injured workers against his or her own employer, "including a separate employer at a multiemployer worksite, or against a third-party defendant, where the action is otherwise permitted by law"; and (2) "codif[ied] existing regulatory law governing employer liability at multiemployer worksites, as set forth in Section 336.10 of Title 18 [sic] of the California Code of Regulations." (Id at pp. 4, 8-9.) Relying on California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 270 Cal.Rptr. 796, 793 P.2d 2 (California Assn.), Eisner contends this opinion is persuasive evidence of the Legislature's intent; Uveges disagrees, pointing out the opinion is merely an ex post facto interpretation of legislative intent and should not be given weight because, not having been presented to lawmakers during the legislative process, it cannot be viewed as an indication of the Legislature's understanding of the effect of its measure.
We agree with Uveges. In California Assn., supra, 51 Cal.3d at p. 17, 270 Cal. Rptr. 796, 793 P.2d 2, the California Supreme Court noted that opinions of the Attorney General, while not binding, are entitled to great weight, and applied that rule to Legislative Counsel opinions. The court's statement, however, was premised on its understanding that such opinions *498 were prepared while the subject legislation was pending. (Ibid, ["While we have found no cases extending that rule to constructions by the Legislative Counsel, the logic is the same. Indeed the rule is particularly compelling as to opinions of the Legislative Counsel, since they are prepared to assist the Legislature in its consideration of pending legislation"]; see also North Hollywood Project Area v. City of Los Angeles (1998) 61 Cal.App.4th 719, 723, 71 Cal.Rptr.2d 675.) We decline to consider this post hoc material evidence of legislative intent. (E.g., El Dorado Palm Springs, Ltd. v. City of Palm Springs, supra, 96 Cal.App.4th at pp. 1173-1174, 118 Cal.Rptr.2d 15.)

E. Prejudice

Having concluded section 6430.5 only authorizes admission of Cal-OSHA regulations or violations into evidence in proceedings by an employee against his or her own employer and that the court erred in permitting the jury to consider evidence of applicable Cal-OSHA regulations and Uveges's violations, we turn to whether the trial court's error prejudiced Uveges. Uveges contends he was severely prejudiced by the erroneous introduction of this evidence, which resulted in (a) improper instructions advising the jury that violation of the Cal-OSHA standards established a presumption of negligence; (b) an erroneous instruction defining "employer" for purposes of section 6304.5 by reference to section 6400's multiemployer workplace provision; (c) the exclusion of standard of care evidence by his own experts; and (d) counsel's repeated arguments highlighting these issues. He argues these errors combined to deprive him of a fair trial and resulted in a miscarriage of justice. Eisner argues the court's ruling regarding the Cal-OSHA regulations, even if error, caused no prejudice" because (1) the jury's negligence finding rests on substantial evidence of Uveges's negligence unrelated to Cal-OSHA violations; (2) Uveges retained a "defense" to negligence per se liability, namely, that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; and (3) Uveges's conduct was in any event subject to Cal-OSHA multiemployer workplace regulations. (Cal.Code Regs, tit. 8, § 336.10.)
In assessing prejudice from these errors, we apply settled rules. In particular, we presume the judgment to be correct. (Denham v. Superior Court (1970) 2 Cal.3d 557, 564, 86 Cal.Rptr. 65, 468 P.2d 193.) Uveges has the burden of affirmatively demonstrating prejudice, that is, that the errors have resulted in a miscarriage of justice. (Cal. Const, art. VI, § 13; Code Civ. Proc. § 475; Cucinella v. Weston Biscuit Co. (1954) 42 Cal.2d 71, 82, 265 P.2d 513; Paterno v. State of California (1999) 74 Cal.App.4th 68, 105, 87 Cal. Rptr.2d 754 [appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice].) "`[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (Seaman's Direct Buying Service, Inc. v. Standard Oil Co. (1984) 36 Cal.3d 752, 770, 206 Cal.Rptr. 354, 686 P.2d 1158, overruled in part on other grounds by Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 102-103, 44 Cal.Rptr.2d 420, 900 P.2d 669 and Delia Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 393, fn. 5, 45 Cal. Rptr.2d 436, 902 P.2d 740.)
*499 We first address Eisner's contention that regardless of any possible error in admitting evidence of Cal-OSHA standards and giving negligence per se instructions on those standards, there was in any event substantial evidence on which the jury could conclude Uveges breached his common law duty of due care.[11] He relies on the proposition: "If one count is not affected by error and there is substantial evidence to support a verdict with respect to it, it is immaterial that there may have been errors committed in connection with another count.... [Citations.] One count sustained by sufficient evidence and free from error is all that is required to support a verdict." (Leoni v. Delany (1948) 83 Cal.App.2d 303, 309, 188 P.2d 765; see also Berger v. Southern Pac. Co. (1956) 144 Cal.App.2d 1, 6, 300 P.2d 170; Wells v. Brown (1950) 97 Cal.App.2d 361, 365, 217 P.2d 995.) Eisner po
ints out his expert McDowell testified that the scaffold at issuea single plank spanning 15 feet from one side of a patio area to a roof, anchored in the center with a two-by-four strut nailed to an unstable pile of lumberwas the most "abysmal," substandard installation he had seen in his 40 years of experience; a "widowmaker" in his terms. The expert explained Uveges did not meet his obligation to anchor the center support securely in that the center support was only three and a half inches wide and was used to support a nine-and-a-quarter-inch-wide plank; the center support's base was nailed through a corner with a single nail and did not sit flat upon the truss below; and the center support was set on an unstable pile of lumber. McDowell also noted the plank was attached to the roof with a single nail within three quarters of an inch from the end of the plank, and would have penetrated the plywood "just slightly."
Had the trial court limited its evidentiary rulings to admission of OSHA standards and regulations based on its erroneous interpretation of section 6304.5, we would agree this evidence would be sufficient to uphold the jury's finding of negligence based on Uveges's common law duty of due care. But the court reasoned custom and practice evidence is inadmissible when it contradicts a law or ordinance, namely the Cal-OSHA standards. It therefore excluded any expert testimony offered by Uveges that the scaffold Frey constructed met the standard of care for single family residential construction, or was in keeping with custom and practice for that type of job. Thus, the trial court's error did affect *500 Eisner's case based on Uveges's general duty of due care unrelated to Cal-OSHA standards. In the absence of the trial court's error in interpreting section 6304.5, evidence of custom and practice would be admissible to rebut Eisner's contention that the scaffold construction fell below the standard of care and violated Uveges's duty to provide safe equipment. (See McKown v. Wal-Mart Stores, Inc., supra, 27 Cal.4th at p. 225, 115 Cal. Rptr.2d 868, 38 P.3d 1094 ["when a hirer of an independent contractor, by negligently furnishing unsafe equipment to the contractor, affirmatively contributes to the injury of an employee of the contractor, the hirer should be liable to the employee for the consequences of the hirer's own negligence"]; Mackey v. Campbell Construction Co., supra, 101 Cal.App.3d at pp. 789-790, 162 Cal.Rptr. 64 [court correctly excluded expert testimony based on Cal-OSHA regulations, but properly allowed expert testimony on custom and practice of scaffold assembly in California].) The ruling deprived Uveges of an essential defense against Eisner's claim he breached his common law duty of due care. Because the ruling prevented him from fully presenting his case, it denied him a fair trial. (E.g., Kelly v. New West Fed, Savings (1996) 49 Cal.App.4th 659, 677, 56 Cal.Rptr.2d 803 [effect of granting in limine motions was to prevent plaintiffs from offering evidence to establish their case; this exclusionary error resulted in denial of a fair trial and was reversible per se]; see also Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc. (1999) 74 Cal.App.4th 1232, 1246-1248, 88 Cal. Rptr.2d 777 [court's ruling excluding all evidence of a particular valuation method for calculating easement rents based on an erroneous application of contract interpretation principles was prejudicial per se].)
Eisner contends Uveges cannot complain of the court's ruling on appeal because he failed to make the required offer of proof under Evidence Code section 354, providing an appellant show the trial court the "substance, purpose, and relevance of the excluded evidence ...." We reject Eisner's offer of proof contention for two reasons. First, an exception to the general requirement of an offer of proof under Evidence Code section 354 applies here; an offer of proof is not a prerequisite to an argument of improper exclusion of evidence "[w]here ... an entire class of evidence has been declared inadmissible or the trial court has clearly intimated that it will receive no evidence of a particular type or class, or upon a particular issue...." (Lawless v. Calaway (1944) 24 Cal.2d 81, 91, 147 P.2d 604; Castaneda v. Bornstein (1995) 36 Cal. App.4th 1818, 1827, 43 Cal.Rptr.2d 10, overruled on other grounds in Bonds v. Roy (1999) 20 Cal.4th 140, 147-148, 83 Cal.Rptr.2d 289, 973 P.2d 66.) Here, the trial court declared an entire class of evidence inadmissiblenamely, expert opinion on the standard of care or custom and practice in the single family residence construction industry. The excluded testimony, which was relevant to Eisner's claim under general negligence principles, obviously fell within that class. The court's evidentiary ruling was the natural consequence of its previous determination that Cal-OSHA standards were relevant and admissible to prove standard of care; in view of the court's final determination on that issue it would have been futile for Uveges to extend an offer of proof. (Evid. Code, § 354, subd. (b); see, e.g., Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co. (1968) 69 Cal.2d 33, 36, 69 Cal.Rptr. 561, 442 P.2d 641, fn. 1;3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 404, p. 493.)
Second, Evidence Code section 354 was satisfied as to the excluded testimony without a formal offer of proof. Eisner made clear the substance of the expert's testimony *501 in his motion; he sought to prevent the expert, Edward Martinet, from testifying Frey's scaffold met the standard of care for smaller construction jobs and attached a portion of Martinet's deposition testimony in which Martinet set forth his conclusion the temporary scaffold was very common on single family projects and met the standard of care for this industry. Because the record establishes that the substance, purpose, and relevance of the excluded testimony was known to the court (Evid.Code, § 354, subd. (a)), Uveges was not required to make a formal offer of proof to preserve his claim of evidentiary error.
Although we need not address them, we reject Elsner's other arguments pertaining to prejudice. Because Elsner could not assert a theory of negligence per se based on Cal-OSHA regulations under section 6304.5, it is irrelevant that Uveges purportedly could have proved a defense to that claim, namely, that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. Elsner asserts: "Uveges presented such evidence through the testimony of Edward Martinet." We disagree with Elsner's characterization of the record. The trial court's evidentiary ruling essentially prevented Martinet from testifying that the scaffold was built in a reasonable manner, i.e., in keeping with scaffolds of the sort used in similar projects. Indeed Martinet's testimony was confined to his opinions that certain Cal-OSHA violations did not cause Elsner's injuries, and the scaffold's construction and the placement of a scrap pile underneath nevertheless complied with Cal-OSHA standards as he interpreted them.
Finally, we reject Elsner's argument that Uveges was not prejudiced because he was in any event subject to Cal-OSHA standards at multiemployer worksites. As we have explained, section 6400 does not subject its defined employers to civil liability in damages; that provision only gives the government the ability to issue citations to those identified employers. It provides no basis for us to conclude Uveges was not prejudiced by the trial court's ruling.
The trial court's interpretation of section 6304.5 naturally resulted in other errors that we need only mention briefly, including in subjecting Uveges to liability under negligence per se principles and defining "employer" not by section 6304's definition, but in terms of section 6400's multiemployer worksite regulations. As we have explained, the codification of multiemployer worksite regulations does not expand civil liability, nor does it give rise to actionable claims for nondelegable duties against third parties based on Cal-OSHA standards; indeed, such claims are prohibited under our interpretation of section 6304.5. If the court's exclusion of Uveges's expert's testimony was not sufficient in itself to establish prejudice, we would conclude based on these additional errors that their cumulative impact requires that we reverse the judgment.

II. State Fund's Appeal

Because we reverse the judgment and remand the matter to the trial court for further proceedings, we need not address State Fund's contention relating to inadequate damages.

DISPOSITION
The judgment is reversed and the matter remanded for further proceedings. Uveges shall recover his costs on appeal.
WE CONCUR: McDONALD, Acting P.J. and McCONNELL, J.
NOTES
[1] All statutory references are to the Labor Code unless otherwise specified.
[2] By the term "third party action," we refer to an action for work-related personal injuries by an employee against a defendant that is not the employee's own employer, often referred to as a third party tortfeasor. (See Draper v. Aceto (2001) 26 Cal.4th 1086, 1088, 113 Cal.Rptr.2d 61, 33 P.3d 479.)
[3] The special instructions based on sections 6400, 6401 and 6403 respectively, provided:

"Every employer shall furnish employment and a place of employment ... that is safe and healthful for the employees therein ..."
"Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."
"No employer shall fail or neglect to do any of the following: [¶] (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. [¶] (B) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."
[4] That special instruction provided: "On multiemployer worksites, employers as used in Labor Code sections 6400, 6401 and 6403 include the following: [¶] (1) The employer whose employees were exposed to the hazard. [¶] (2) The employer who actually created the hazard. [¶] (3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, which is the employer who had the authority for ensuring that the hazardous condition is corrected. [¶] (4) The employer who had the responsibility for actually correcting the hazard."
[5] As Eisner points out, before the 1971 enactment of former section 6304.5, courts held under various factual scenarios that Labor Code safety provisions and orders were admissible for purposes of proving liability under a negligence per se theory. (See Armenta v. Churchill (1954) 42 Cal.2d 448, 455, 267 P.2d 303 [trial court erred in prohibiting introduction of construction safety order against defendant who backed up his truck over another worker at a jobsite; order established a minimum standard of care in the safe operation of the truck and its violation would constitute negligence per se]; Porter v. Montgomery Ward & Co., Inc. (1957) 48 Cal.2d 846, 847-849, 313 P.2d 854 [Labor Code industrial safety orders can be received in evidence to establish negligence liability by not only employees, but by general members of the public who are entitled to the benefit of the safety order]; De Cruz v. Reid (1968) 69 Cal.2d 217, 229-232, 70 Cal.Rptr. 550, 444 P.2d 342 [general industry safety order pertaining to transportation of employees on flatbed trucks was appropriately considered by the jury in determining whether it gave rise to a presumption of negligence; evidence established defendant fell within the Labor Code definition of "employer" as one having control over the place of employment [former section 6304] and that the truck therefore was transporting an "employee" for purposes of applying the safety order]; see also Solgaard v. Guy F. Atkinson Co. (1971) 6 Cal.3d 361, 366-367, 99 Cal. Rptr. 29, 491 P.2d 821 [in a case against a building contractor by a doctor injured while attempting to treat employees trapped on a worksite, trial court properly gave instructions on Labor Code provisions and safety order requiring an employer to furnish a safe means for workmen to enter and leave an evacuated area].)
[6] Adopted by the Director of Industrial Relations in December 1997, section 336.10 of the California Code of Regulations, entitled "Determination of Citable Employer," provides: "On multiemployer worksites, both construction and non-construction, citations may be issued only to the following categories of employers when the Division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the Division: [¶] (a) The employer whose employees were exposed to the hazard (the exposing employer); [¶] (b) The employer who actually created the hazard (the creating employer); [¶] (c) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite; i.e., the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer); or [¶] (d) The employer who had the responsibility for actually correcting the hazard (the correcting employer). [¶] Note: The employers listed in subsections (b) through (d) may be cited regardless of whether their own employees were exposed to the hazard." (Cal. Code Regs., tit. 8, § 336.10.)
[7] Indeed, the Legislature expressly eliminated entities such as general contractors who exercise control over subcontractors' employees from that definition. This court has observed that "[b]efore 1971, Labor Code section 6304 provided: `"Employer" shall have the same meaning as in section 3300 and shall include every person having direction, management, control or custody of any employment, place of employment, or any employee.' (Italics added.) However, a 1971 amendment of the statute deleted the italicized language." (Lopez v. University Partners (1997) 54 Cal.App.4th 1117, 1126, fn. 4, 63 Cal.Rptr.2d 359, citing Historical Note, 45 West's Ann. Lab.Code (1989 ed.) § 6304, p. 251 & Spencer v. G.A. MacDonald Constr. Co., supra, 63 Cal.App.3d at pp. 847, fn. 5, 848, fn. 7, 134 Cal.Rptr. 78; see also Smith v. ACandS, Inc., supra, 31 Cal.App.4th at p. 90, 37 Cal.Rptr.2d 457, disapproved on another ground in Camargo v. Tjaarda Dairy, supra, 25 Cal.4th at p. 1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096.) In De Cruz v. Reid, supra, 69 Cal.2d at p. 228, 70 Cal.Rptr. 550, 444 P.2d 342, the court addressed the pre-1971 Labor Code definition of "Employer," and other terms, stating: "These sections which are found in division 5 of the Labor Code dealing with `Safety in Employment' were originally enacted `as part of a broad legislative program .. . designed to improve the position of the working man. The legislative program was two-pronged; it sought increased safety on the job by imposing duties that were greater than those prescribed by the common law [citations], and, if injury occurred, it sought mitigation of hardship by a system of loss-shifting that was largely unknown under the common law. [Citation.]' [Citation.] In line with this objective the definition in section 6304 is obviously intended to enlarge the meaning of `employer' beyond its usual meaning. . . .' [Citation.]" (Italics added.) Under the pre 1971 expanded definition of employer, courts recognized an employer-employee relationship between the person injured and the owner of a place of employment was not essential for application of the Labor Code. (Markley v. Beagle (1967) 66 Cal.2d 951, 956, 59 Cal.Rptr. 809, 429 P.2d 129; Kuntz v. Del E. Webb Constr. Co. (1961) 57 Cal.2d 100, 106, 18 Cal.Rptr. 527, 368 P.2d 127; Porter v. Montgomery Ward & Co., supra, 48 Cal.2d at pp. 847-849, 313 P.2d 854.)
[8] Indeed, interpreting the statute as Eisner proposes would result in the following disparity: In an employee's personal injury action against his or her own employer, the employee would be permitted to introduce evidence of the employer's violations of Cal-OSHA regulations to establish a presumption of that employer's negligence. The employer in that circumstance could attempt to rebut the presumption by introducing evidence that the Cal-OSHA inspector in fact did not issue a citation. A third party defendant, on the other hand, faced with an employee's claim it violated the same Cal-OSHA standards, would be prohibited from rebutting the presumption with evidence the inspector failed to cite it for any violation. We fail to see any compelling reason for this disparate treatment, and we believe it is further evidence that the Legislature did not intend such an inequitable result.
[9] This Analysis, prepared when the bill was in its original form, explains: "Under current law, government regulatory standards are generally admissible into evidence in negligence and wrongful death actions. They are typically used in such cases to establish a standard of care. In 1971, the Legislature barred the admission into evidence of occupational health and safety standards, and thereby created an exception to the general rule. This bill repeals that exception." (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 1127 (1999-2000 Reg. Sess.) as introduced February 25, 1999, p. 6.)
[10] The Legislative Counsel's Digest to the chaptered bill simply states: "Existing law provides that the provisions of the California Occupational Safety and Health Act of 1973 (hereafter the act) have no application to, may not be considered in, and may not be admitted into, evidence in any personal injury or wrongful death action arising after January 1, 1972, except as between an employee and his or her employer, [¶] This bill instead would provide that neither the issuance of, or failure to issue, a citation by the Division of Occupational Safety and Health (hereafter the division) has any application to, nor may be considered in, nor may be admitted into, evidence in any personal injury or wrongful death action, except as between an employee and his or her employer. The bill also would provide that Sections 452 and 669 of the Evidence Code would apply to the act and the occupational safety and health standards and orders promulgated under the Labor Code in the same manner as any other statute, ordinance, or regulation." (Legis. Counsel's Dig., Assem. Bill No. 1127 (1999-2000 Reg. Sess.).)
[11] There is no question that Uveges's own employee, Frey, caused the allegedly hazardous condition. Consequently, this is not a situation where Eisner seeks to impute negligence to Uveges; that is, hold him vicariously or derivatively responsible for the negligence of another. It appears Eisner did not proceed on his theory of peculiar risk. Thus we do not delve into considerations raised by Privette v. Superior Court, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (failure to take precautions against peculiar risks), 7bland v. Sunland Housing Group, Inc. (1998) 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504 (negligent hiring), and Camargo v. Tjaarda Dairy, supra, 25 Cal.4th 1235, 108 Cal. Rptr.2d 617, 25 P. 3d 1096 (same). Because this case involves Uveges's own fault in creating the alleged dangerous scaffolding, Eisner was free to establish so-called "direct" liability under standard common law negligence principles, including by applying the general contractor's duty to provide safe equipment when it undertakes to do so or to avoid affirmatively contributing to an employee's injuries by its retained control over safety conditions at a worksite. (Hooker v. Dept. of Transportation (2002) 27 Cal.4th 198, 202, 115 Cal.Rptr.2d 853, 38 P.3d 1081; McKown v. Wal-Mart Stores, Inc. (2002) 27 Cal.4th 219, 225, 115 Cal.Rptr.2d 868, 38 P.3d 1094; McDonald v. Shell Oil Co. (1955) 44 Cal.2d 785, 788-789, 285 P.2d 902; see Ray v. Silverado Constructors (2002) 98 Cal.App.4th 1120,1128, 120 Cal.Rptr.2d 251.)