BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE RAYMOND FORTNER, COUNTY COUNSEL, COUNTY OF LOS ANGELES, has requested an opinion on the following question:
Is a governmental entity required to retain biological material secured in connection with a misdemeanor case for the period of time that a person is incarcerated in connection with the case?
 CONCLUSION
A governmental entity is not required to retain biological material secured in connection with a misdemeanor case for the period of time that a person is incarcerated in connection with the case.
 ANALYSIS
In 2000, the Legislature enacted legislation (Pen. Code, §§ 1405,1417.9)[1] to provide a procedure for prisoners to seek postconviction "DNA" testing of biological evidence. Subdivision (a) of section 1405 provides:
 "A person who was convicted of a felony and is currently serving a term of imprisonment may make a written motion before the trial court that entered the judgment of conviction in his or her case, for performance of forensic deoxyribonucleic acid (DNA) testing."
Section 1417.9 requires government agencies to retain biological material that may become the subject of a postconviction motion for DNA testing. As relevant here, section 1417.9 states:
 "(a) Notwithstanding any other provision of law and subject to subdivision (b), the appropriate governmental entity shall retain all biological material that is secured in connection with a criminal case for the period of time that any person remains incarcerated in connection with that case. The governmental entity shall have the discretion to determine how the evidence is retained pursuant to this section, provided that the evidence is retained in a condition suitable for deoxyribonucleic acid (DNA) testing.
 "(b) A governmental entity may dispose of biological material before the expiration of the period of time described in subdivision (a) if all of the conditions set forth below are met:
 "(1) The governmental entity notifies all of the following persons of the provisions of this section and of the intention of the governmental entity to dispose of the material: any person, who as a result of a felony conviction in the case is currently serving a term of imprisonment and who remains incarcerated in connection with the case, any counsel of record, the public defender in the county of conviction, the district attorney in the county of conviction, and the Attorney General.
 "(2) The notifying entity does not receive, within 90 days of sending the notification, any of the following:
 "(A) A motion filed pursuant to Section 1405. However, upon filing of that motion, the governmental entity shall retain the material only until the time that the court's denial of the motion is final.
 "(B) A request under penalty of perjury that the material not be destroyed or disposed of because the declarant will file within 180 days a motion for DNA testing pursuant to Section 1405 that is followed within 180 days by a motion for DNA testing pursuant to Section 1405, unless a request for an extension is requested by the convicted person and agreed to by the governmental entity in possession of the evidence.
 "(C) A declaration of innocence under penalty of perjury that has been filed with the court within 180 days of the judgment of conviction or July 1, 2001, whichever is later. However, the court shall permit the destruction of the evidence upon a showing that the declaration is false or there is no issue of identity that would be affected by additional testing. The convicted person may be cross-examined on the declaration at any hearing conducted under this section or on an application by or on behalf of the convicted person filed pursuant to Section 1405.
 "(3) No other provision of law requires that biological evidence be preserved or retained.
". . . . . . . . . . . . . . . . . . . . . . . . ."
(Italics added.)
The question presented for resolution focuses upon the language of subdivision (a) of section 1417.9, which requires the retention of all biological material "that is secured in connection with a criminal case." Because sections 1405 and 1417.9 elsewhere refer only to "felony" convictions, and not to misdemeanor convictions, we are asked whether section 1417.9 requires biological material to be preserved in misdemeanor cases. We conclude that the statute does not so require.
In interpreting the requirements of section 1417.9, we apply well established rules of statutory construction. The fundamental purpose in interpreting a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. (Dyna — Med, Inc. v. Fair Employment Housing Com. (1987) 43 Cal.3d 1379, 1386-1387; In re Rojas (1979) 23 Cal.3d 152, 155.) As part of this examination of the Legislature's intent, we may consider whether the literal language of the statute comports with its purpose as well as whether a literal construction of one provision would be inconsistent with other provisions. In Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, the court observed:
 ". . . The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] . . . [E]ach sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to a more reasonable result will be followed [citation]."
It is apparent that section 1417.9 requires governmental entities, particularly law enforcement agencies, to retain biological material in circumstances where it may become the subject of a prisoner's postconviction motion for DNA testing. Not only was section 1417.9 enacted in conjunction with section 1405, but it makes repeated references to motions "pursuant to Section 1405." But a motion "pursuant to Section 1405" may only be filed by "[a] person who was convicted of a felony and is currently serving a term of imprisonment." (§ 1405, subd. (a).) Thus, construing section 1417.9 to require biological material to be preserved in misdemeanor cases would not further the purpose of preserving biological evidence for those who may ask to have the material tested.
It is also apparent that section 1417.9 permits government agencies to dispose of biological material when there is no reasonable likelihood that the material will be the subject of postconviction testing. Subdivision (b) of the statute describes the circumstances under which a government agency may give notice and dispose of biological material even though someone is incarcerated in connection with the case. Persons convicted of misdemeanors are not included in these notice procedures, unlike persons serving felony terms. It would be anomalous to construe section 1417.9 as applying in situations where persons who have no interest in whether the material should be preserved would nevertheless be the only ones who are notified of its intended destruction.
Our construction of sections 1405 and 1417.9 finds further support in the legislative history of these statutes. (See In re Dannenberg (2005) 34 Cal.4th 1061, 1081
["If . . . the statutory language is susceptible of more than one reasonable construction, we can look to legislative history"].) As initially proposed, section 1405 would have made motions for postconviction DNA testing available to "[a] defendant who was convicted in a criminal case." (Sen. Bill No. 1342 (1999-2000 Reg. Sess.) as introduced Jan. 10, 2000.)
An analysis of this early version of the bill by the Assembly Committee on Public Safety noted that "this bill would apply in all criminal cases, is not limited to felony cases, and would include misdemeanors as well." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1342 (1999-2000 Reg. Sess.) as amended Jun. 13, 2000, p. 7.)
On August 14, 2000, the bill was amended to make its testing procedures available only to "[a] defendant who was convicted of a felony and is currently serving a term of imprisonment . . ." and to permit biological material to be destroyed after notice to "any person, who as a result of a felony conviction in the case is currently serving a term of imprisonment and who remains incarcerated in connection with the case . . . ." (Sen. Bill No. 1342 (1999-2000 Reg. Sess.) as amended Aug. 14, 2000.) It appears from the legislative committee reports that these bill amendments resulted from a concern that the costs associated with the storage of biological evidence would be "potentially significant." (See, e.g., Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1342 (1999-2000 Reg. Sess.) as amended Aug. 14, 2000, pp. 3-4.)[2]
In Elsner v. Uveges (2003) 106 Cal.App.4th 73, 90, the court recently reviewed a similar situation where the Legislature changed the language of a bill during the legislative process:
 ". . . We focus on the fact lawmakers once proposed a provision unambiguously stating otherwise, but deleted it when the bill was passed: ` "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." ' (Beverly v. Anderson (1999) 76 Cal.App.4th 480, 485-486; see also California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 845-846.) `Similarly, "[t]he fact that the Legislature chose to omit a provision from the final version of a statute which was included in an earlier version constitutes strong evidence that the act as adopted should not be construed to incorporate the original provision." ' (Beverly v. Anderson, at p. 486.)"
Our construction of sections 1405 and 1417.9 is also consistent with the contemporaneous construction of these statutes by those charged with making them effective. In 2001, the Attorney General published a handbook, "Postconviction DNA Testing: Recommendations for Retention, Storage and Disposal of Biological Evidence," to provide assistance in complying with the requirements of the new statutes. The handbook was produced by a task force consisting of representatives from the Attorney General's office, district attorneys' offices, law enforcement agencies, the judiciary, and forensic laboratories. The handbook recommended retention of evidence containing biological material in all felony cases, but did not allude to misdemeanor cases. As a contemporaneous construction by officials charged with putting these statutes into effect, the handbook's recommendations are persuasive in construing the terms of sections 1405 and 1417.9. (See Gay Law Students Assn. v. Pacific Tel. Tel. Corp. (1979)24 Cal.3d 458, 491; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208,245.)
Finally, we reject the suggestion that in this situation misdemeanor convictions must be treated the same as felony convictions under the equal protection clauses of the federal and state Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. 1, § 7; see, e.g., Newland v. Board of Governors (1977) 19 Cal.3d 705,712-713.) In Cooley v. Superior Court (2002) 29 Cal.4th 228,253, the court observed:
 "`"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.] `The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.'"
If two groups are not similarly situated, an equal protection claim "cannot succeed, and does not require further analysis." (People v. Nguyen (1997)54 Cal.App.4th 705, 714-715; see, e.g., In re Roger S. (1977) 19 Cal.3d 921, 933-935.)
With respect to felony and misdemeanor convictions, "[t]here is . . . a significant difference in the quality and duration of punishment, as well as in the resultant long-term effects, which are brought about by a conviction for a felony as opposed to that for a misdemeanor." (In re Valenti (1986) 178 Cal.App.3d 470,475.) Generally, misdemeanor terms are served in local detention facilities, while felony terms are served in state prison. (Pen. Code, §§ 17, 19; see In re Eric J. (1979) 25 Cal.3d 522, 537-538.) In People v. Ansell (2001) 25 Cal.4th 868, 872-873, the court pointed out additional differences:
 "Less known, perhaps, are the collateral consequences associated with a felony conviction after sentence has been served. Most of these disabilities have existed in some form for decades, and many appear in statutes outside the Penal Code. Some of the more common rules include disqualification from jury service, impeachment as a witness, inaccessibility to firearms, and registration as a sex offender. In addition, a felony conviction may disqualify the person from practicing many licensed trades and professions and from holding certain positions of public employment." (Fns. omitted.)
Further, a felony term of imprisonment is followed by a period of supervised parole. (Pen. Code, § 3000.) In contrast, when misdemeanants conclude their sentences, there is no further obligation or loss of civil rights. (Newland v. Board of Governors, supra, 19 Cal.3d at p. 712; People v. Hibbard (1991) 231 Cal.App.3d 145, 149.)
Given these different penalties and consequences for misdemeanor convictions, we believe that misdemeanants are not similarly situated vis-a-vis felons for purposes of sections 1405 and 1417.9. Of course, the Legislature may choose to amend these statutes to include misdemeanor cases — along the lines that it initially considered but rejected during the legislative process.
We conclude that a governmental entity is not required to retain biological material secured in connection with a misdemeanor case for the period of time that a person is incarcerated in connection with the case.
[1] All further statutory references are to the Penal Code.
[2] "Committee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 646.)